Both of the above suits entitled suit number 1 and suit number 2 seek a construction of the will of Henry P. Simmons, deceased. Under the terms of this will a number of trusts were established. In the present proceeding certain of these trusts are attacked as violative of the rule against perpetuities. It is contended on the part of Mary Eliza Hadley, both individually and as trustee, that the trusts which are the subject of attack are valid and should be executed.
The second suit cited above embraces all the issues raised in suit number 1 and also some additional issues with additional necessary parties. The determination of suit number 2 will therefore dispose of all the issues raised in both suits.
By stipulation of all the parties in interest the two suits were tried together.
Henry S. Hadley, on behalf of himself individually, and as executor of the will of Henrietta P. Simmons, deceased, and also as next friend of his infant daughter, Joan Henrietta Hadley, filed exceptions to two accounts of Mrs. Hadley, as surviving trustee under the will of Henry P. Simmons, deceased, *Page 288 
for the years ending December 31st, 1926 and 1927. These accounts and the exceptions were filed in chancery suit entitled "Jane E. Gillen, complainant, v. Mary Eliza Hadley et al., trustees under the will of Henry P. Simmons, deceased." The determination of the issues in suit number 2 will dispose of these exceptions.
The following facts appear to be uncontroverted:
1. Henry P. Simmons died testate June 18th, 1896, leaving him surviving as his next of kin and heirs-at-law, four daughters — Sarah Louise Howe, wife of Dr. Edwin J. Howe; Jane Elizabeth Gillen, widow; Henrietta P. Simmons, unmarried, and Mary Eliza Hadley, wife of J. Frank Hadley.
2. The will of Henry P. Simmons was admitted to probate by the New Jersey prerogative court December 20th, 1897 The executors named in the will duly qualified and administered the estate, and executors filed their final account and turned over to Mary E. Hadley and J. Frank Hadley, as trustees under said will, the property constituting the trusts established thereby.
3. These two trustees administered the trusts pursuant to the terms of the will until Dr. Hadley's death, which occurred November 2d 1922. Since that time, Mrs. Hadley, as sole surviving trustee, has continued to administer these trusts.
4. Mrs. Howe died in July, 1906, leaving no issue. She had made a will in favor of her husband, Dr. Howe, but he predeceased her, and her will, therefore, never took effect. She left as her next of kin and heirs-at-law her three sisters, Mrs. Gillen, Miss Simmons and Mrs. Hadley.
5. Henrietta P. Simmons died testate August 26th, 1926. She was never married. Her will was admitted to probate by the surrogate of Passaic county. Henry S. Hadley was named as executor thereof and he has duly qualified as such. By the terms of her will, Miss Simmons devised and bequeathed to Henry S. Hadley and to his daughter, Joan Henrietta Hadley, all her interest in the estate of Henry P. Simmons, deceased, without defining that interest.
6. Mrs. Gillen is now seventy-four years of age and Mrs. Hadley is seventy-two. They are the only surviving daughters of Henry P. Simmons. *Page 289 
7. Mrs. Gillen has one daughter, Margaretta Westervelt Chavis, who was born September 8th, 1884. She will be forty-four years of age on September 8th, 1928.
8. Mrs. Hadley has two sons, Henry S. Hadley, one of the complainants in suit number 1, born August 20th, 1894, and now thirty-four years of age, and Julian F. Hadley, born July 8th, 1900, now twenty-eight years of age.
9. One child was born to Mrs. Chavis November 19th, 1911. He was adopted at a very early age by a Miss Spence, who is now deceased, and Mrs. Chavis has no knowledge of his present residence or post-office address, or whether he is now living. Up to the present time no one connected with these suits has been able to locate this child. If living, he is now in his seventeenth year.
The question before this court is as to whether the trust created by the tenth clause of the will is void because it violates the rule against perpetuities. On two previous occasions this will was before this court and an attempt was made to secure a construction of this tenth clause, but on each occasion the decision was that the application for such construction was improper and premature because of the then existing condition of the estate and the nature of the proceedings in which the construction was sought. At the time of the last two previous applications for such construction the estate was chargeable with the payment of certain annuities but these annuities are now no longer payable and the nature of the proceedings now brought is such that there is no obstacle in the way of a construction of the clause in controversy.
By the tenth clause of the will testator devised certain property in trust, first, for the benefit of his four daughters, and then under certain circumstances to their children, and proceeded to make various dispositions of the remainder at the termination of the trust. It is contended on the part of Henry S. Hadley, one of the successors in interest to one of the heirs and next of kin of testator, that the limitations attempted to be placed upon the devolution of the income and later on thecorpus of the estate violate the rule against *Page 290 
perpetuities, and that accordingly the attempted trust is voidin toto and that testator died intestate as to the property sought to be placed in this trust, and the corpus of the trust descended to the heirs and next of kin of testator immediately upon his death.
By subdivision two of the tenth clause a so-called special trust is created and the validity of this trust is not now questioned.
By subdivision eight what has been called a general trust is created and by its provisions all the rest, residue and remainder is to be held in trust on certain terms and conditions. The income is to be distributed first to the four children of testator, with certain further disposition of the income upon certain conditions and certain contingent dispositions of the remainder.
Although in terms but one general trust was created the court in construing and carrying out the intent of the testator will consider that under such provisions as these each of the four streams of distribution will be considered as being separate trusts. Camden Safe Deposit and Trust Co. v. Guerin, 89 N.J. Eq. 556.
By subdivision ten of clause ten a certain share of the net income, being one-fourth of the total income of the general trust, is payable to one of the daughters, Jane Elizabeth Gillen, and under certain circumstances to an existing granddaughter, Margaretta, but terminating this portion of the trust in any event on the deaths of both the daughter and granddaughter. In my opinion there is no question as to the validity of this particular trust amounting to one-fourth of the general trust and the controversy accordingly narrows itself down to the validity of the attempted limitation placed upon the remaining three-fourths of the general trust.
The relevant subdivisions of the tenth clause upon which construction is sought recite as follows:
"8. That after the payment of my just debts and after the payment of taxes and assessments on my estate, and the necessary expenses of keeping said estate in good order, and after the payment of such sums as in the judgment of my said trustees may be necessary and *Page 291 
proper from time to time for the proper development and improvement of my said estate, all the remaining net income, rents, issues and profits arising or derived from said estate shall be divided equally, at least twice a year, in such manner that there shall be one share thereof set apart for the use and benefit of each of my children, to wit, Sarah Louise, wife of Edwin J. Howe, M.D., of the city of Newark, in the county of Essex and State of New Jersey, Jane Elizabeth, widow of William H. Gillen, deceased, residing in the city, county and State of New York; Henrietta Simmons, now living with me in the city of Passaic aforesaid; and Mary Eliza, wife of Jacob Frank Hadley, M.D., also of the city of Passaic aforesaid. In case of the death of either of my said children, leaving lawful issue her surviving, such issue shall take the share of her mother in such net income, per stirpes and not per capita, until such surviving issue, or the younger or youngest of such issue, if there be more than one child, shall have arrived at the age of twenty-five years; and when such surviving issue of either of my said daughters, or the younger or youngest of such issue, if there be more than one child, shall have arrived at the age of twenty-five years, my said trustees shall pay over and convey to such issue in fee-simple, one-fourth of all my trust estate then remaining in the hands of my said trustees."
"13. That upon the death of any two of my said three daughters, to wit, Jane Elizabeth Gillen, Henrietta Simmons and Mary Eliza Hadley, leaving no lawful issue them surviving, or leaving lawful issue none of whom shall arrive at the age of twenty-five years, then and in either of such cases, my said trustees shall pay over and convey to the survivor of my said three daughters, in fee-simple, all of the trust estate then remaining in their hands; if upon the death of all of my said three daughters, to wit, Jane Elizabeth Gillen, Henrietta Simmons and Mary Eliza Hadley, any two or more of them shall leave lawful issue them surviving, and the lawful issue of all but one of such daughters, shall die before arriving at the age of twenty-five years, then and in that case, my said trustees shall pay over and convey to the surviving issue of either of my said daughters, in fee-simple, all of the trust estate then remaining in their hands, notwithstanding such surviving issue shall not have arrived at the age of twenty-five years; provided, nevertheless, that in case my said daughter Sarah Louise Howe, should survive her three sisters aforesaid, and should also survive the lawful issue of any two of her said three sisters, my said trustees shall not pay over and convey to her any portion of the principal of my said trust estate, but they shall retain the use and possession of one-fourth of said estate during the natural life of said Sarah Louise Howe, and shall pay out and expend the net income therefrom, solely at their own discretion, for the benefit and comfort of my said daughter, Sarah Louise, only as her circumstances and necessities may require, during her natural life; and upon her death, in case she shall survive her three sisters aforesaid, and shall also survive the lawful issue of any two of such sisters, said one-fourth of my said trust estate shall vest in and become the absolute property of the last surviving of such lawful issue, in his, her or their heirs and assigns forever." *Page 292 
The English common law forbidding perpetuities is in force in this state. In the case of Graves v. Graves, 94 N.J. Eq. 268,
Chancellor Walker held:
"The rule against perpetuities which is not the creature of statute in our state but has come to us from the English common law is stated in Theob. Wills 597, as follows: `A limitation by way of executory devise is void as too remote, if it is not to take effect until after the determination of one or more lives in being and upon the expiration of twenty-one years afterwards, as a term in gross and without reference to the infancy of any person who is to take under such limitation, or of any other person, allowance for gestation being made only in those cases where it actually exists.'"
In the case of Graves v. Graves, supra, Chancellor Walker, after citing numerous cases, lays down the construction of the rule as follows:
"It is the possibility that the period covered by a life or lives in being and twenty-one years thereafter may be exexceeded, and not the certainty or even probability that it will be exceeded, in a given trust, which calls for the application of the rule."
In McGill v. Trust Company of New Jersey, 94 N.J. Eq. 657,
Vice-Chancellor Buchanan (at p. 664) says:
"That rule requires that all future interests, legal or equitable, in realty [except dower and curtesy and rights of entry for conditions broken] or personalty, which are contingent and indestructible, must be such as necessarily to vest, if at all, within the term mentioned by the life or lives of a person or persons in being at the time of the creation of the interest and twenty-one years therafter; otherwise they are invalid and void."
Applying these principles to the case before the court, it is clear that the rule is violated since the final necessary vesting of the corpus of the trust might be postponed until the reaching of the age of twenty-five years by a grandchild of testator not yet born at the time of the taking effect of the will. *Page 293 
In construing the will it must be borne in mind that in contemplation of the law there is always a possibility of the birth of a child to any one of the four daughters of testator so long as she remains alive and irrespective of her age. Graves
v. Graves, supra.
Subdivision eight of the tenth clause provides that the income from the general trust shall be divided among his four children during their lives and then on the death of any (the testator says either, but probably this is to be construed as any) of said children, the issue of said child shall receive the parent's income until the youngest of such issue shall have arrived at the age of twenty-five years and that when such surviving issue shall have arrived at the age of twenty-five years one-fourth of the trust estate shall be conveyed to such issue. This is obviously an attempt to continue the trust until the youngest child, if any, of each of testator's children shall reach the age of twenty-five years, at the end of which time the corpus, namely, one-fourth of the entire trust estate shall be conveyed to all the issue surviving that particular daughter of testator. This subdivision has apparently no provision for the vesting of the remainder on any other contingency.
Subdivision thirteen of the tenth clause sets up other contingencies. The first one is that on the death of any two of three of his daughters, namely, Jane Elizabeth Gillen, Henrietta P. Simmons and Mary Eliza Hadley, leaving them no lawful issue surviving, the remainder shall vest in the survivor of these three. The second contingency set up is that in case of the death of any two of these three named daughters leaving lawful issue, none of whom shall arrive at the age of twenty-five years then the remainder shall go in fee to the survivor of said three daughters. The third contingency is that on the death of all three of said named daughters, if any two or more of them shall leave lawful issue them surviving, and the lawful issue of all but one of such daughters shall die before arriving at the age of twenty-five years, then the remainder shall go to the surviving grandchild notwithstanding such surviving grandchild shall not have *Page 294 
arrived at the age of twenty-five years. There is a further provision in subdivision thirteen that in no case shall the fourth daughter, Sarah Louise Howe, if she survives her other three sisters, receive any portion of the principal of the trust estate. The disposition to be made in this event does not concern us here since as a matter of fact she was the first of the four daughters to die.
As I understand it, these provisions of the will in substance are:
Each of the four daughters is to have the income from one-fourth of the general trust for her life. In case two of the three daughters named in subdivision thirteen, namely, Mrs. Gillen, Miss Simmons and Mrs. Hadley, should die without leaving any descendants, the third of these three named daughters was to receive in fee-simple the remainder of the trust created for their benefit. A special provision was made for the survival by the fourth daughter, Mrs. Howe, but this is irrelevant since she has died under conditions which render that provision inoperative. In case any of the daughters die leaving descendants, such descendants are to receive the income from the mother's share until the youngest grandchild should reach the age of twenty-five, whereupon the descendants of the deceased daughter should receive the corpus of that part of the trust, namely, a one-fourth interest.
In case, however, two of the three daughters named in subdivision thirteen of the tenth clause, namely, Mrs. Gillen, Miss Simmons and Mrs. Hadley, should die leaving lawful issue, none of whom should arrive at the age of twenty-five years, then the remainder should go to the survivor of these three named daughters. In case all of these three named daughters should die leaving issue and the issue of all but one of such named daughters should die before reaching twenty-five years of age, then the remainder should go to the surviving grandchild of the third named daughter even though such grandchild had not arrived at the age of twenty-five years.
This means that in case one of the four daughters die leaving one or more children, even though the child be born *Page 295 
after the death of the testator, that the vesting of the corpus
of the trust could not be determined nor could the vesting take place until twenty-five years after the death of the particular daughter, because if the grandchild did not attain the age of twenty-five years it could not take any vested interest under any circumstances unless it be the only surviving grandchild of the testator and then only in case all the cousins of said last surviving grandchild should have died under the age of twenty-five years.
It is true that one of the limitations in subdivision thirteen, if standing alone, would be valid, namely, that the survivor of the three named daughters should take the remainder providing the other two named daughters died leaving no issue. But this limitation does not stand alone, but is only one of several contingencies, and the rule which requires the vesting of the remainder is satisfied only when each and every contingency which is set up as a limitation upon alienation must necessarily take place within lives in being and twenty-one years. It is clear that the testator attempted to prevent the vesting of the remainder until his youngest grandchild should reach the age of twenty-five years, if he should have any grandchildren who survived his daughters. At the time the will took effect it was perfectly possible that he could have an after-born grandchild by any one of his daughters. As a matter of fact he has had up to now three grandchildren, two born before his death and one born since his death, namely, Julian F. Hadley, born in 1900. If Mrs. Hadley had died at any time before 1905, her one-fourth interest in the estate would not have vested in her two sons until 1925. If she had died at any time after 1900 and before 1904, her portion of the trust estate would have remained unvested for a period of from twenty-two to twenty-five years after the end of a life in being at the time of the creation of the trust, and accordingly there would have been a clear violation of the rule against perpetuities. The actual situation as applied in Mrs. Hadley's case to what did happen on account of the birth of a child in 1900, in contemplation of law could have happened to all the other three sisters, since legally, it was possible for any one *Page 296 
of them to have had a child and, in fact, it is still legally possible for the two now surviving to have a child. Since the rule against perpetuities deals with possibilities under the attempted limitations, it seems to me fully established that the testator attempted to prevent the vesting of the remainder on contingencies which might extend beyond the time permitted by the law.
Counsel for Mary E. Hadley contend that a valid trust is set up under the provisions of clause ten of the will on the theory that the first part of subdivision thirteen sets up a contingency not repugnant to the rule, namely, the death of two of the three daughters without leaving any issue, whereupon the estate is to vest in the third surviving daughter. They contend that this particular contingency is valid and that it is separable from the other contingencies set forth later in the same subdivision thirteen of the tenth paragraph. I am of the opinion that it is not separable. It is true that if the remainder of the estate vests under this particular provision it will vest within the limits fixed by the rule against perpetuities. The argument for separability rests on a misconception of the rule, which requires that no matter what contingency or contingencies are set up, the remainder must in every one of the contemplated events vest within the period limited by the rule. The mere fact that the remainder may vest does not validate the trust, since the rule is that the remainder must vest in any event.
It is further contended that it is impossible at this time to determine whether the above-stated provision, namely, the death of two of the three daughters without issue, will take effect and that therefore there can be no distribution until that question is determined by future events. This contention erroneously assumes the validity of the provision itself. Since the trust itself is invalid, there is no occasion to await the determination of these events.
In my opinion the trust or trusts attempted to be created of three-fourths of the so-called general trust under the tenth clause of the will are invalid and void because of the foregoing provisions of the eighth and thirteenth *Page 297 
subdivision of that clause, since they violate the rule against perpetuities. The testator therefore died intestate as to this portion of his estate.
The legatees of Henrietta P. Simmons, deceased, namely, Henry S. Hadley and Joan Henrietta Hadley, are in my opinion entitled each to a one-eighth part of the general trust estate together with the same proportionate share of the income thereon from the time of the death of Henrietta P. Simmons.
I shall advise a decree in compliance with these views. *Page 298