FIRST CAMDEN NATIONAL BANK AND TRUST COMPANY, respondent,

*v.*

ANNE ALBERTSON COLLINS, appellant, et al., defendants.

[Argued May 17th, 1933. Decided September 27th, 1933.]

*Mr. Merritt Lane,* for the appellant.

*Mr. William T. Boyle,* for the complainant-respondent.

The opinion of the court was delivered by

Parker, J.

The bill is by an executor for instructions relating to the will of John J. Albertson, deceased, and for a declaration of the rights and duties of complainant thereunder. The practical importance of the questions raised, however, arises from the fact that the will, which disposed of an estate of over $600,000 and cut off testator's widow and children with a pittance, incorporated by reference a prior trust deed which of itself dealt with a trust fund of only $20,000. It is the provisions of the trust deed as affecting the disposition of the general estate, that presents the critical problem.

Neither the will nor the trust deed is fully quoted in the opinion below. The will, by clause 11, simply says: "All the rest, residue and remainder of my estate, wheresoever situate, I give and bequeath to First Camden National Bank and Trust Company, trustee for the John J. Albertson Fund which was established January 21st, 1926, to be used for the purposes therein provided."

The trusts set up in the trust deed conveying the original $20,000 in securities are lengthy, but must properly be quoted in large part. For convenience they are appended in a footnote.

It will be seen that the purpose of the deed of trust was in the first instance to accumulate a fund over the extreme limit of time, permitted by our rule of perpetuities, viz., the life of the survivor of a specified number of persons who were very young children expressly selected as favorable life risks, and twenty-one years after the death of the last survivor. The deed then provides that *after* the expiration of the twenty-one years from the death of the survivor, the bank, up to that time trustee of the fund, shall proceed to form the corporation to which, "upon the termination of the trust as herein provided" they are to "turn over the fund." The deed undertakes to select a board of managers of the proposed corporation to begin their duties about a century after the making of the deed, judging by all reason human probabilities,

and on the assumption that the bank and a safe deposit company, Swarthmore college, and the Meeting of the Society of Friends, not to mention the State of New Jersey, will be in existence and have officers available to serve on the board.

We incline to agree that the intended ultimate disposition of the fund is a charitable one, and that the charity indicated is sufficiently definite to support the gift, and not so broad as to invalidate it. But we are unable to take the view that the title to the fund vests within the period limited by the rule against perpetuities. So far as this state is concerned, the rule is a judge-made rule; and in England, where it originated, the celebrated case of *Thellusson* v. *Woodford, 4 Ves. 227; 11 Ves. 112; I. E. R. C. 498,* created such a reaction that the period of accumulation was reduced by statute (*39, 40 Geo. III.*), to a period not exceeding in any event the life of the settlor and twenty-one years after his death. The common law rule was considerably older than *Thellusson* v. *Woodford,* and even the statute seems not to have been wholly effective in cases of executory devise. *Cadell* v. *Palmer, 1 Cl. & F. 372.* We are not concerned with the English rule further than to say that New Jersey seems to have taken over the common law rule, and never to have interfered with it by statute except in the case of cemetery plots. *Moore's Ex'r* v. *Moore, 50 N. J. Eq. 554.* In other states, apparently under the lead of New York, and including Michigan, Wisconsin, Minnesota and California, the rule has been essentially narrowed by statute. From this it is inferable that the English rule was regarded as broader than public policy would permit. Irrespective of that fact, we consider that public policy requires that the application of the rule be kept rigidly within bounds and not extended beyond its plain limits. One of these limits is that an estate for accumulation *must* vest within the prescribed period, and not merely that it *may* vest within that time. *48 C. J. 988, 990.* It is the possibility that the period allowed by the rule may be exceeded, and not the certainty or even the probability that it will be exceeded, in a given trust, that calls for the application of the rule. *Graves* v. *Graves, 94 N. J. Eq. 268.*

Where title must vest if at all in a corporation intended to be formed upon or after the expiration of the lawful period of accumulation, and the creation of such corporation requires an act of the legislature, the gift is void. *Cruikshank* v. *Home for Friendless, 113 N. Y. 337.* Some of the cases seem to hold that if special incorporation is not necessary and the desired incorporation may be had under the existing general law, though after the lawful period of accumulation has expired, the gift will be good. But there is great danger in leaning toward an application of the rule favorable to a charity because it is a charity, and this the court below seems to have done in this case. We are not impressed by the charitable feature of a trust for accumulation of a $600,000 fund, which is not to be devoted to charity for nearly a century and in the meantime it is to draw interest from investment. Such a fund, invested at five per cent. and disregarding losses, doubles about every fourteen years. In eighty-four years it should be thirty-eight millions, in ninety-eight years nearly seventy-seven millions. The charity itself must in all probability wait at least eighty-four years. Then, if the corporation can be formed according to the specifications stated in the deed of trust, and the fund be turned over to it "in the infancy of the project" the trustee corporation is to put by as much as practicable until the fund reaches the stupendous total of three hundred and twenty-seven million dollars, which at best would be about one hundred and thirty years from the death of the testator.

Such a "charitable" scheme requires no particularly favorable consideration. We willingly follow the language of Judge Gray in his well known work on Perpetuities, section 629: "Every provision in a will or settlement is to be construed as if the rule did not exist and then to the provision so construed the rule is to be remorselessly applied."

Whatever public policy there is in this case operates, as we think, against the validation of the trust under consideration. We construe it as requiring the fund to be held until after the lawful period has elapsed, and until some specially constituted corporation can and shall be organized to receive

it, and with no assurance whatever that such organization can be effected without legislation to authorize it. The hiatus we deem fatal to the trust.

The decree below is reversed with instructions to decree that the bequest in clause 11 of the will is invalid.

---

The deed of trust named as grantee and assignee The First National State Bank of Camden and assigned the $20,000 par value in securities above mentioned.

"To have and to hold the same unto the said trustee, and its successors, upon the following trusts and conditions:

"To invest the net income therefrom in the name of 'John J. Albertson Fund' in shares of stock of corporations commonly known as Building and Loan Associations, except as hereinafter otherwise provided, which said associations shall be under the supervision of the appropriate officers of any state in the United States of America, preference to be given to those operating in the State of New Jersey.

"As such shares of building and loan association stock mature, or are paid off, or are withdrawn, the trustee is directed to re-invest the proceeds thereof in good first real estate mortgages upon property situate within the present or any future extended limits of the State of New Jersey, or in other building and loan association stock or other securities, as hereinafter provided, and to continue to re-invest the principal and income in manner aforesaid, as expeditiously as possible, for and during the lives of my three grandchildren: Lester Albertson Collins, Ruth Wills Collins, and Jack Lane Collins; also Joseph Baker Cramer, 3d, grandson of A. D. Ambruster, vice-president and trust officer of the First National State Bank of Camden; William Rowland Kimble and Bertha Knerr Cann, respectively the nephew and niece of Stanley C. Kimble, cashier of the First National State Bank of Camden; and to continue to so re-invest the principal and income for a period of twenty-one years after the death of the survivor of the last named persons.

"The present object of this trust is to build up as large a fund as possible for the charitable object hereinafter outlined and at the same time to help worthy people start in life by assisting them to secure homes on the partial payment plan, in which plan I have been actively engaged for thirty-five years as organizer and secretary of the Mutual Building and Loan Association of Magnolia, New Jersey. Upon the termination of the trust as herein provided the trustees shall turn over the fund to a corporation to be organized under the laws of the State of New Jersey under such acts of the legislature as may be sufficient for the accomplishment of the purposes herein provided, the name of the corporation to be the 'John J. Albertson Foundation.'

"After the expiration of twenty-one years from the death of the survivor of the said persons, said trustee shall proceed to form the corporation and provide for a sufficient number of officers to comply with the law as to incorporations under an act of said legislature, and shall then pay over the principal and accumulations of said trust fund to said corporation.

"In order to comply with my wishes, the original incorporators shall provide in their certificate or in such other manner as shall be lawful that the board of managers of said foundation shall consist of the following persons:

"The active president and cashier, then in office, of the First National State Bank of Camden, Camden, New Jersey, or such bank as shall succeed it; and three of the directors of said bank or its successor, to be chosen by the other members of the board of managers.

"The active president and treasurer, then in office, of the Camden Safe Deposit and Trust Company, Camden, New Jersey, or its successor.

"The active treasurer, then in office, of the State of New Jersey.

"The active president, then in office, of Swarthmore College, Swarthmore, Pennsylvania.

"One, at a time, of my direct descendants between the ages of thirty and seventy years, to be selected by reason of his or her qualifications, by the other members of the board of managers once every ten years.

"The active clerk, then in office of the Pennsylvania Yearly Meeting of the Religious Society of Friends now meeting at Fifteenth and Race Streets in the city of Philadelphia, Pennsylvania, of which I am a member.

"Each of the above shall be a member of said board during his or her continuance in the aforesaid office with the right of succession therein to his or her successor in said offices or positions. If, for any reason whatever, any member of said board of managers shall refuse to serve on such board or shall become disqualified to so serve, and there shall be no successor to such person, as hereinbefore provided, the surviving members of said board shall fill such vacancy, conforming as far as possible in such selection to my original intentions herein expressed, and subject to the approval of the representative committee of the Philadelphia Yearly Meeting of the Religious Society of Friends, now meeting at Fifteenth and Race streets, in the city of Philadelphia, Pennsylvania.

"I desire to have as incorporators of said foundation as many as is possible of the members of the board of managers of said foundation.

"From the board of managers herein designated are to be elected such officers or committees as may be deemed necessary for the proper performance of the duties of the board.

"Upon the payment of said fund to the 'John J. Albertson Foundation' the board of managers of said corporation shall then purchase the necessary land in the name of said 'John J. Albertson Foundation' the location of the land being left to the best judgment of the board although I prefer that a site be selected within the bounds of the original Gloucester county near where my ancestor, William Albertson, located in the seventeenth century. Upon the acquisition of title to said land, necessary and suitable buildings with equipment are to be erected thereon to establish and maintain or to enlarge a school or schools for boys, girls, young men and young women, to be devoted to the upbuilding of the physical, moral, intellectual and religious growth of the youth of succeeding generations; the religious training to be along the lines as

laid down by early members of the Religious Society of Friends of which I am a member, and with due regard for the principles of simplicity, honesty, justice, punctuality, peace, temperance, and above all 'brotherly love' as taught by Jesus Christ. I also desire that the 'Christ Within' or 'Conscience' be developed in our youth so that the child and adult will always be admonished when tempted to sin.

"It is my intention under the provisions of the foregoing trust that the education herein provided shall be furnished without expense to the boys, girls, young men and young women for whom it is herein intended.

"The 'John J. Albertson Foundation' shall not expend for such land and buildings at any time in the aggregate, a sum in excess of one-third of the value of the estate paid over to said foundation by the trustees at the termination of this trust. After the estate is turned over to said foundation, it is to employ said The First National State Bank of Camden, its successors or assigns, as its fiscal agent in the management and investment of funds, at not to exceed the rate of compensation as herein provided for the care of the trust." (At which point follow provisions with regard to the powers and conduct of the trustees unnecessary to reproduce here.)

"If any of the provisions of said trust or directions to the board of managers are impracticable or for any sufficient reason cannot be carried into effect, then I direct said trustee or said board of managers, as the case may be, to make the necessary changes in the policy as here outlined to overcome the obstacles so that my wishes may be met as far as possible and practicable, that this undertaking may continue a perpetual blessing for future generations.

"I reserve the right to add to the principal of said trusts fund by depositing money or securities or otherwise with the trustee to be held, invested, re-invested and finally disposed of in the manner hereinbefore provided in respect to the securities herewith deposited.

"I have provided for the determination of this trust in order to avoid any possible question of its validity. If, however, at the time fixed for the determination of this trust fund,

it is possible to continue the future accumulation of a portion of the income to be thereafter annually derived from the said fund by the said 'John J. Albertson Foundation,' then I desire the said corporations use as little of the income of this fund as in its judgment may be necessary during the infancy of this project so that it may be able to make additions from the future annual income to the principal of said fund, until the principal of said fund shall have reached the sum of three hundred twenty-seven million dollars."

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ.  14.