The defendants move to dismiss the amended bill of complaint. Complainants' case centers in a forfeiture clause *Page 316 
in the will of Florence R. Strauss, deceased, although the subject-matter of the suit is part of the estate of her husband, Bernard Strauss. He died in 1906, survived by his wife and by their only child, Irving Strauss, who was a helpless invalid from birth until death. Bernard gave one-half of his residuary estate to his wife absolutely, and the other half to his son for life, remainder to such persons as Mrs. Strauss should, by her will, appoint, and in case she fail to appoint, then to testator's heirs and next of kin. It is this remainder in one-half of Bernard's residuary estate that is in litigation. Mrs. Strauss died in 1918, while Irving survived until 1947, when he died without issue. The power given Mrs. Strauss by her husband, she exercised in favor of her executors upon certain trusts, which, of course, did not become operative until the termination of Irving's life estate. The residue of Mrs. Strauss' own estate she gave to her executors in trust to pay $500 annually to her son's nurse:
"And to apply the balance of the income thereof or so much of said balance as may be necessary or desirable and also thecorpus of said trust fund or so much of said corpus as may be necessary or desirable to the care maintenance and support of my said son for and during the term of his natural life; and it is my will and I do so direct my said executors that my said son should be maintained in manner and style compatible with the extent of my estate, always mindful that the prime consideration in his maintenance and support is what may tend to his happiness, health and well being and that to the fulfillment of this end not only the income but also the corpus of the estate shall be devoted."
Her will also contained the following:
12. "Any person who may benefit by the provisions of this my last will, whether it be by the disposition of my own estate or in the exercise of the power of appointment by will given to me by my husband's last will, who, in any manner either directly or indirectly shall institute, encourage or participate in any proceedings or matter or thing whatsoever, whether in the regular course of law or otherwise, having for its object the avoidance of this my last will or any provision therein contained shall thereby forfeit and forego any and all benefits accruing to him under this will and shall forever become disqualified from receiving any benefits or advantages whatsoever out of my own estate or out of the estate of my deceased husband under the power of appointment vested in me." *Page 317 
The complainants allege that certain beneficiaries of Mrs. Strauss' will, who were also appointed by her to her husband's estate, attempted to defeat her gift to her son and thereby forfeited the appointment, and hence that Bernard Strauss' estate should be distributed as if there had been a partial failure to appoint. That is, the part not effectually appointed should go to Bernard's heirs and next of kin.
The amended bill shows that these beneficiaries of Mrs. Strauss' will, acting in concert, were responsible for five years of litigation over her estate: exceptions in the Orphans Court to her executors' account and three bills in Chancery. Briefly, the question in all four causes was this: Under the direction in Mrs. Strauss' will that her executors pay Irving so much "as may be necessary or desirable" for his care, maintenance and support, should they, in determining how much to pay him, take into consideration the income which he received from his half of his father's estate? Or should they pay him from his mother's estate the total amount desirable for his maintenance so that he might accumulate the income from his father's estate? Participation in, or even the promotion of, the litigation did not work a forfeiture. Griffin v. Sturges (Conn.), 40 Atl. Rep.
2d 758; 156 A.L.R. 972. A judicial proceeding instituted to obtain an interpretation of a will has for its object the fulfillment of testator's intention, and not its frustration.
The exceptions to the executors' account were voluntarily withdrawn and one of the Chancery bills was never pressed. The other two suits were consolidated and were heard by Vice-Chancellor Backes. Counsel have furnished me with a copy of the record in the consolidated suits to supplement the allegations in the present bill of complaint. On May 2d 1930, a final decree was made, with the consent of Irving and some other parties, whereby Mrs. Strauss' executors were directed to apply $25,000 annually out of her estate for the support of Irving and to accumulate one-half of any excess income during Irving's life, and to distribute currently the other half of any excess income among the persons who would be entitled to receive the income upon Irving's death, namely, Mrs. Strauss' sister-in-law, Bertha J.F. Rice, and the latter's *Page 318 
son, Joseph Rice, and testatrix' brother and sisters, Alexander S. Rice, Rose R. Siegel, and Leah R. Fuld.
The will of Mrs. Strauss directed her executors, upon the death of Irving, to pay legacies of $11,000 and to continue to hold the estate after paying the legacies, upon further trusts. Namely, to pay the income to the persons named in the decree and at the death of Mrs. Rice pay to Joseph Rice one-quarter of the estate, and at the death of the survivor of Alexander, Rose and Leah, to divide the remaining three-quarters among the children of Rose and Leah. The bill of complaint of Leah R. Fuld and others, prayed a present distribution of surplus income. But it is clear, and was so understood by the parties and by Vice-Chancellor Backes that the life cestuis of the further trust were entitled to no income until the death of Irving. Under the scheme of the will, any surplus income should have been accumulated and added to corpus, thus increasing the final gift to Joseph and the children of Rose and Leah. Chrisman v. Cornell University,132 N.J. Eq. 178. The decree for current distribution of income was based on the needs of the parties and on consents. All the remaindermen consented to the decree except one, who was an absent defendant. The others, as well as the life beneficiaries, obligated themselves to indemnify him for all payments made under the decree in so far as his interest might be affected.
Here was a departure from the precise terms of the will brought about, so the bill charges, by the concerted action of the five persons to whom payments of surplus income was decreed, the three remaindermen who consented, the one who was absent, and his wife. Children and parents contrived, with the court's approval, to divert to the parents a part of what Mrs. Strauss had bequeathed to the children. This was not an "avoidance of this my last will or any provision therein contained" within the meaning of the twelfth paragraph of the will. The forfeiture clause relates to a hostile proceeding, not to a gift.
The distribution of one-half the surplus income lessened in some degree the security of Irving, since such income, if accumulated in the hands of Mrs. Strauss' trustees, would *Page 319 
have constituted a reserve which, in case of need, could be used for Irving. But the recitals in the decree and the allegations of the present bill of complaint show that Irving's security was ample without the accumulations and that the retention by the trustees of all surplus income, instead of only one-half of it, would have been of no benefit to Irving. The estates at the date of the decree were yielding a combined income of $78,000 yearly, more than twice Irving's wants; the corpus of his mother's estate, available should the income dwindle, was over $400,000. The chance that Irving would ever have any use for more, was so small that it could be disregarded without violating Mrs. Strauss' plans for the care of her son.
But the bill charges also that the consent of Irving, the invalid son of Mrs. Strauss, was given unwillingly, as the price of peace, to put an end to litigation. If it appeared that Irving was harassed into surrendering part of his inheritance, the forfeiture clause would operate, but the complainants do not show that such was the case. The recitals in the decree state that in the five years preceding its date, the lowest income for a year that Irving received from his father's estate was $21,000, and that "under normal conditions," not less than $37,000 was to be anticipated. Adding $25,000 from his mother's estate gave Irving an expected income of more than $60,000, or if the lowest year be taken, $46,000. It also appeared that the total annual expenditures for Irving's maintenance in the five years had averaged $30,000 and had not risen above $35,000. The decree provided for him $15,000 to $30,000 more, if his other income be taken into account, than appeared "necessary or desirable" for his "care, maintenance and support." The decree also reserved to Irving liberty to apply for an increase in the amount appropriated for his support should conditions change.
Vice-Chancellor Backes, at the hearing, expressed the tentative opinion that Mrs. Strauss meant merely to make up any deficiency in the income Irving received from his father's estate, and did not intend that her own estate should be the primary fund for his support. If this was the correct interpretation of her will, then Irving received under the decree *Page 320 
large sums that his mother had intended for her nieces and nephews. Had the consolidated suits been contested to the end, the Vice-Chancellor, or the Court of Errors and Appeals might perhaps have taken a view opposite to that which he expressed at the hearing and held that Irving was entitled to more than $25,000 a year from his mother's estate. But this would not lead to the conclusion that the parties who procured the decree and induced Irving to consent, were guilty of an act leading to a forfeiture of their appointment by her will. The question in dispute was difficult; the settlement which was embodied in the decree was fair and advantageous to all parties, even though Irving consented reluctantly. Mrs. Strauss directed that a forfeiture should result only from some matter "having for its object the avoidance of this my last will or any provision thereof." She did not intend to prevent a fair compromise of divergent interpretations of the will, especially a settlement approved by the court.
The bill will be dismissed for failure to show a cause of action.