[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 583 
The defendants, Alexander S. Rice, individually and in his representative capacity on behalf of the estates of Bernard Strauss and Florence R. Strauss, and others moved for summary judgment in their favor on the counterclaim *Page 584 
filed by the defendants-counterclaimants, Robert Herzog et al. With the exception of the question of perpetuities, the counterclaim sets up the same allegations and seeks the same relief as did the complaint filed by the plaintiffs. The complaint was stricken by orders of the Court of Chancery, Marxv. Rice, 142 N.J. Eq. 315 (Ch. 1948); affirmed on appeal by the Supreme Court, 1 N.J. 574 (Sup. Ct. 1949). On the appeal, the defendants-counterclaimants petitioned and were granted leave to intervene, argue and file a brief. The present motion to strike the counterclaim was initiated while the appeal was pending, and because of the identity of issues I deferred decision until after the Supreme Court had made its determination. The defendants have renewed their motion to strike and the counterclaimants have moved to amend in particulars hereafter to be discussed.
 I.
The remaining issue raised by the counterclaim to be determined on this motion concerns the rule against perpetuities. The facts are detailed in the opinion of the Supreme Court. For the purposes of this decision, the following are pertinent: Bernard Strauss died July 5, 1906, survived by his widow Florence, who died January 31, 1918, and their son, Irving, who died October 9, 1947, without issue. By his will, Bernard bequeathed and devised one-half of his estate to his widow absolutely and the other one-half to his son, Irving, for life. He provided that if Florence should predecease their son and if he died without issue, which happened, then he bequeathed and devised the remainder "to such person or persons as my said wife, Florence, shall by her last will and testament appoint and, in case she shall fail to make such appointment," then to his heirs and next-of-kin. By her will, Florence Strauss exercised the power of appointment, by appointing her executors upon certain trusts. The Supreme Court declared her power of appointment to be general and that, although exercised by placing the property in trust, it was, nevertheless, valid, because "unless the donor manifests a *Page 585 
contrary intent, the donee of a general power of appointment may make appointments in trust. * * * We perceive no manifestation of a contrary intent in the will presently before us."
The counterclaimants argue, however, that the exercise of the power by Florence R. Strauss was in violation of the rule against perpetuities because the life in being specified in the will of Bernard Strauss was that of his son, Irving; that all interests must vest within twenty-one years after his death and that Florence Strauss extended the vesting of the estate beyond the life of Irving and twenty-one years thereafter. The defendants argue that Irving's is not the sole life to be considered in measuring the period under the rule; and that all the interests in Bernard's estate will necessarily vest before the expiration of the period interdicted by the rule against perpetuities.
The familiar rule against perpetuities is that all future interests, legal or equitable, must vest, if at all, within the term measured by the life or lives of a person or persons in being at the time of the creation of the interest and twenty-one years thereafter. It is the possibility that the period may be exceeded, and "not the certainty or even probability that it will be exceeded, in a given trust, which calls for the application of the rule." Graves v. Graves, 94 N.J. Eq. 268 (Ch. 1922);McGill v. Trust Company of New Jersey, 94 N.J. Eq. 657 (Ch.
1923); affirmed, 96 N.J. Eq. 331 (E. A. 1924); FirstCamden, etc., Trust Co. v. Collins, 114 N.J. Eq. 59 (E. A.
1933); Camden Safe Deposit, etc., Co. v. Scott, 121 N.J. Eq. 366
(E. A. 1936).
The nature of a power of appointment is thus described inRestatement, Property, Introductory Note, Topic 2, c. 27,p. 2294:
"The power of appointment is a hybrid between concepts of agency and concepts of property. To the extent that a power of appointment has been thought of as a mere authority to act for the donor in the completion of a disposition initiated by the donor, the agency factor has dominated and the doctrine of `relation-back' has been applied. To the extent, however, that a power of appointment has been thought of as giving to the donee a control over the appointive assets which *Page 586 
is the substantial equivalent of ownership, the property factor has dominated, and the validity of an attempted exercise of a power has been determined as if it had been a disposition by the donee of his owned assets."
Whenever such a power is in fact exercised, the validity of the appointment is determined by precisely the same rule as if the original testator, who created the power, had in his own will the same provision in favor of the same appointee. The donee of the power takes from the donor, the original testator, from the date of his death. With reference to the rule against perpetuities, the remoteness of an appointment depends on its distance from the creation and is to be measured or computed from the date of the death of the testator, and not from the exercise of the power.Ogden v. McLane, 73 N.J. Eq. 159 (Ch. 1907); Camden SafeDeposit, etc., Co. v. Scott, supra. Central Hanover Bank, etc.,Co. v. Helme, 121 N.J. Eq. 406 (Ch. 1937), and cases therein cited. Minot v. Paine, 230 Mass. 514, 120 N.E. 167,1 A.L.R. 365 (Mass. Sup. Ct. 1918); Fiduciary Trust Co. v.Mishou, 75 N.E.2d 3 (Mass. Sup. Ct. 1947); Bartlett v.Sears, 81 Conn. 34, 70 A. 33 (Conn. Sup. Ct. 1908);Mifflin's Appeal, 121 Pa. 205, 15 A. 525 (Pa. Sup. Ct.
1888); In re Warren's Estate, 320 Pa. 112, 182 A. 396 (Pa.Sup. Ct. 1936); Gray, Perpetuities (4th ed.), §§ 473, 474.2, 526, 963; Notes, 1 A.L.R. 374; 101 A.L.R. 1282;104 A.L.R. 1352.
In the application of the rule to a general testamentary power,Restatement, Property, § 392, declares:
"An appointment under * * * a general testamentary power * * * is invalid, because of the rule against perpetuities, only to the extent, that its limitations
 (a) construed in the light of the circumstances existent when the power is exercised, but
 (b) measured for the purpose of applying the rule against perpetuities, from the time when the power was created,
violate that rule."
The affidavits on the motion for summary judgment disclose that all of the cestuis of the trust established under *Page 587 
the exercise of the power of appointment by Florence R. Strauss were alive at the time of the death of the donor. Mrs. Strauss set up two funds, one for $10,000 and the other for $24,000. With respect to the $10,000 fund, she directed that the income be paid to Marian D. Marx for life and upon her death the fund be distributed between her two daughters, Paula and Fannie, with a proviso that if Paula should not be married, then two-thirds was to be paid to her and one-third to Fannie; but if Paula were married, then the fund was to be shared equally between them. Marian D. Marx died on September 15, 1946, having predeceased Irving. At the time of her death, both her daughters were married; they are still living. The counterclaimants contend that the contingency of the marriage of Paula invalidates the bequest. The contention is without merit because the fact of marriage did not affect the vesting of the interest in the appointees, but merely the extent of the interest.
The fund of $24,000 was thus disposed off: income to be paid to Moses Strauss for life and upon his death, the corpus to his children, Isidore, Daniel and Paula, in equal shares. Moses, the life tenant, predeceased Irving, having died September 25, 1926. He was survived by his three children, who are still living.
The residue of the property Florence R. Strauss directed to be sold and the proceeds divided into four equal shares, to be held in trust as follows: One share was set aside for the benefit of Bertha J.F. Rice and Joseph Rice, her son; one-third of the income was to be paid to Bertha and the remaining two-thirds to Joseph, and upon the remarriage or death of Bertha, the corpus
of said share with accumulations thereon was to be paid to Joseph. Bertha died in 1942, survived by her son, Joseph, who is still living. As to the other three shares, the net income to Alexander S. Rice, Rose R. Siegel and Leah R. Fuld so long as they may live and until the death of the last survivor of them; and upon the death of the last survivor, the trust estate to be distributed in equal proportion among the children of Rose and Leah per capita. Alexander S. Rice and Leah R. Fuld are living. Rose R. *Page 588 
Siegel died on November 9, 1933, survived by two daughters, Helen S. Simpson and Alice R. Hannoch, who are still living. Leah R. Fuld, a widow, now about 76 years of age, has two children, Abram L. Fuld and Florence F. Vogel. Abram absconded about December 20, 1928, and his present whereabouts are unknown. Florence F. Vogel is living. All of the foregoing persons were living when Bernard Strauss, the donor, died.
The counterclaimants urge that the exercise of the appointment as aforesaid is violative "of the rule against perpetuities because of the possibility of children being born to * * * Leah beyond the period measured by the life in being (Irving Strauss) and twenty-one years. It is also violative of the rule because there is no vesting of the interest until the death of the survivor of Alexander, Rose and Leah, and there is no certainty that this will happen within a period measured by twenty-one years after the death of Irving." The fallacy of the contentions lies in the fact that the Supreme Court has construed the power to be a general, and not a special or limited, power. The provisions of the will of Bernard creating the power are to be read together with the will of Florence exercising the power. Applying the standard that the exercise of a general testamentary power should be "construed in the light of the circumstances when the power was exercised" but "measured for the purpose of applying the rule against perpetuities from the time when the power was created," there is no violation of the rule. Irving who was the life tenant under Bernard's will and all of the persons appointed by Florence under her will were living at the date of death of the donor. Measured by all those lives in being at and from the time of the creation of the power, there will be an absolute vesting within the prescribed period. Thus, reconstructing the provisions, we have the following: Income to A (Irving) for life; thereafter, income to B, C and D (Alexander Rice, Rose Siegel and Leah Fuld) during their lives, and upon the death of the last survivor of them, corpus to be divided among the children of C and D (Rose and Leah) in equal shares. A, B, C and D being alive at the death of *Page 589 
the testator, there must necessarily be a vesting within the period measured by their lives in being, and twenty-one years thereafter. Rose being dead, the only person whose heirs may be increased is Leah, who is a widow, 76 years of age. While in theory and contemplation of law, the possibility of issue is always supposed to exist, 2 Bl. Com. 125; In re Smith,94 N.J. Eq. 1 (Ch. 1922); Graves v. Graves, supra; Schumacherv. Howard Savings Institution, 126 N.J. Eq. 325 (Ch. 1939);Byers v. Fidelity Union Trust Co., 132 N.J. Eq. 416 (Ch.
1942), the appointment in the particular instance is not invalidated because such issue would necessarily be born in the lifetime of Leah and would share in the ultimate distribution of the estate.
The defendants further argue that even if the exercise of the power in trust in some respects violates the rule against perpetuities, which they deny, the counterclaimants cannot benefit because they are heirs-at-law and next-of-kin of Bernard Strauss, the donor, and not related to Florence R. Strauss, the donee. The defendants' contention is in this respect well-founded. The recognized principle is thus stated by Professor Scott in Trusts, § 426, p. 2208: "Where a person upon whom a general power of appointment is conferred makes an appointment to a trustee upon a trust which fails, the trustee holds the property upon a resulting trust for the estate of the donee of the power, unless it was otherwise provided in the instrument by which the power was created or unless the donee of the power manifested a different intention." See, also,Restatement, Trusts, c. 12, § 426; Fiduciary Trust Co. v.Mishou, supra; Gray, Perpetuities, § 540.1. The donor provided that only in case the donee should fail to appoint was the property to be given to his heirs and next-of-kin. However, the donee did not fail to appoint. According to the general rule, therefore, if in the exercise of the power the trust or some part of it should fail for remoteness, there is nothing in the donor's or donee's will to manifest an intention that the property should not become part of the donee's estate.
The defendants are entitled to summary judgment on the counterclaim. *Page 590 
 II.
The counterclaimants made two motions, one for an order to amend the counterclaim and the other for an order to take depositions for the purpose of establishing that Irving Strauss was harassed into and gave his consent unwillingly to a decree advised by Vice-Chancellor Backes and entered on May 2, 1930. For a clearer understanding of the merits and the facts involved in the applications, reference must be made to previous proceedings.Marx v. Rice, supra. Briefly, Paragraph Eight of the will of Florence Strauss directed that all the income and corpus of her estate was to be devoted to the care, maintenance and support of her son Irving who was an invalid. Paragraph Twelve stipulated for forfeiture of any benefits under her will by any person who, in any manner, either directly or indirectly, instituted or participated in any proceeding or matter which had for its object the avoidance of any provision of her will. On December 21, 1925, certain beneficiaries filed exceptions to the account filed in the Orphans' Court by Florence's executors and trustees. Later two bills were filed in the Court of Chancery for the construction of the will and directions. The causes were consolidated and heard by the late Vice-Chancellor Backes, and resulted in a final decree, which was consented to by Irving. The consent decree provided that a portion of the income from the estate in excess of a specified minimum sum was to be paid to and distributed among remaindermen who normally would not have been entitled to receive the income until after Irving's death. An appeal was taken from this consent decree by some of Bernard's kindred, but was abandoned upon payment to them of the sum of $25,000.
The plaintiffs and the counterclaimants allege the foregoing facts in their respective pleadings, charging that the proceedings initiated by the beneficiaries were in violation of the forfeiture clause. The cause of action was designated as the second cause of action in plaintiffs' complaint, which was dismissed by the Court of Chancery, affirmed by the Supreme Court. Marx v. Rice, supra. The Supreme Court held that *Page 591 
the foregoing proceedings did not constitute a violation of the forfeiture clause for the reason that "A judicial proceeding instituted to obtain an interpretation of a will has for its object the fulfillment of the testator's intention and not the avoidance of it."
The counterclaimants wish to amend their counterclaim to assert that the diversion of some of the income from Irving for the benefit of other beneficiaries under the will and the payment of the sum for settlement of the appeal violated the eighth paragraph of Florence's will, and therefore these acts amount to an avoidance of her will and a forfeiture under Paragraph Twelve thereof. The difficulty with the application is the argument by counterclaimants that the issue which they propose to raise has not already been considered and disposed of. The facts which they desire to allege in the amendment were before the Court of Chancery as well as the Supreme Court. A reading of the Supreme Court's opinion will show that the court did consider the diversion of income from Irving to others and also the moneys paid for abandonment of the appeal, declaring:
"Thus the recitals in the decree and the allegations of the present bill of complaint clearly show that the income available to Irving from his father's and mother's estate was far in excess of any of his possible needs and he consented that a portion of the income from his mother's estate be advanced to the life beneficiaries who would succeed to the income at his death, and in this consent he was joined by the remaindermen. Irving was primarily interested in this income and he was sharing the surplus not needed by him with those who would take life estates after him and were then in great need. This was done with the approval of the court. * * * `The forfeiture clause relates to a hostile proceeding, not to a gift. * * * She (Mrs. Strauss) did not intend to prevent a fair compromise of divergent interpretations of the will, especially a settlement approved by the court.' And by the same token the payment to some of Bernard's kindred to abandon an appeal from the consent decree under the circumstances hereinabove related, did not work a forfeiture."
The construction placed by the Supreme Court on the acts of the parties and its decision thereon are binding here. The case ofAlper v. Alper, 2 N.J. 105, 65 A.2d 737 (1949), upon which counterclaimants rely, is distinguishable on the facts. *Page 592 
There, the court held the acts of the parties to be in violation of the interrorum clause; here, the Supreme Court decided that there was no violation under the forfeiture clause. The application to amend the counterclaim is denied.
The basis for the application of the counterclaimants to take depositions to establish that Irving was harassed into and gave his consent unwillingly and as the price of peace to the decree of May 2, 1930, is to be found in the opinion of Vice-Chancellor Bigelow, 142 N.J. Eq. 315: "But the bill charges also that the consent of Irving, the invalid son of Mrs. Strauss, was given unwillingly as the price of peace, to put an end to litigation. If it appeared that Irving was harassed into surrendering part of his inheritance, the forfeiture clause would operate, but the complainants do not show that such was the case." The application, however, must be denied for these reasons in addition to those above stated. The decree which it is alleged was the product of harassment, was entered more than nineteen years ago. Irving, who was the subject of the alleged harassment, has been dead since October 9, 1947. A witness by whom the counterclaimants hoped to establish harassment, Irving's nurse, Mathilde Heck, has died. In the interval, persons who were parties to the previous proceedings have died as will appear from the statement of facts in the preceding point. Furthermore, in an appropriate case, if it is desired to be shown that a decree is the result of improper influence, application should be made to set the decree aside and in the cause in which the decree was entered — not in a collateral proceeding. In re Realty TitleIns. Co., 126 N.J. Eq. 523 (Ch. 1940).
Judgment will be entered in accordance with the foregoing conclusions.
 ADDENDUM.
After the release of my opinion dated June 10th, there came to my attention the very recent opinion of the Supreme Court inBurlington Trust Co. v. Di Castelcicala, decided May 9, 1949,2 N.J. 214, 66 A.2d 164. The case is definitely pertinent *Page 593 
and in my view supports the conclusions I reached. I should like to add to my opinion some of the relevant remarks of Mr. Justice Case: "A power is subject to the rule against perpetuities and is, when created by will, void unless, by its authorizing language, it must be exercised within a life or lives in being and twenty-one years thereafter. * * * If a power can be exercised at a time beyond life or lives in being, plus twenty-one years from its creation, it is bad. If title to property or an interest to property does not vest within life or lives in being plus twenty-one years after the creation of the interest, it does not vest at all. With a power, the ad-measurement is from creation to exercise. With title, it is from creation to vesting."