CAMDEN SAFE DEPOSIT AND TRUST COMPANY, executor and trustee, &c., complainant-respondent,

*v.*

FLORENCE POWELL SCOTT et al., defendants; HELEN POWELL FAVRE, defendant-appellant.

[Submitted October term, 1935; and resubmitted May term, 1936. Decided February 2d, 1937.]

*Mr. D. Trueman Stackhouse,* for the appellant.

*Mr. William Clayton Jones,* for the respondent.

*Messrs. Starr, Summerill & Lloyd,* for Alfred E. Driscoll, guardian *ad litem* for the infant defendants.

The opinion of the court was delivered by

PERSKIE, J.

The question requiring decision in this cause is whether the will of Dr. William E. Powell violates the rule against perpetuities. Paragraph 6 thereof provides:

6:A. "I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, whatsoever and wheresoever situate, unto my Excutor hereinafter named, upon trust, nevertheless, to divide the same into two equal parts or shares and to hold, invest and re-invest each of said equal parts or shares and to pay the income arising from one said equal parts or shares unto my daughter, Florence Powell Scott, during the term of her natural life and to pay the income arising from the other of said equal parts or shares unto my daughter Helen Powell Favre, during the term of her natural life, and upon the death of either of my said daughters, I direct my said Trustee to divide the trust fund of the daughter so dying into as many equal parts or shares as my said daughter so dying shall leave children her surviving, one share for each child and to continue holding upon trust the shares of my granddaughters during the terms of their natural lives, and to continue holding upon trust the shares of my grandsons until they shall severally arrive at the age of thirty years and to pay the income arising therefrom unto my respective grandchildren after they shall arrive at the age of twenty-one years."

6:B. "In case any of my grandchildren shall be minors at the time of its mother's death, then I direct my said Trustee to apply the income arising, during its minority, from its trust fund toward the education of my said minor grandchild."

6:C. "In case any of my daughters shall die without issue her surviving, then and in that event I direct that her share of my estate shall be distributed by my Trustee in such manner as my daughters so dying shall by her will direct, but in default of such direction, then I direct the share of my daughter so dying shall be distributed unto her surviving sister or in case her sister shall predecease her then unto the surviving children of her sister."

6:D. "And in case of the death of any one of my grandsons before attaining the age of thirty years and in case of the death of my granddaughters, I direct that my Trustee shall distribute the trust fund of the grandchild so dying in such manner as said grandchild shall by will direct but in default of such instructions then I direct that said deceased grandchild's share shall be distributed equally between the remaining brothers and sisters of the grandchild so dying, or in case of no brothers or sisters, then I direct it shall be distributed equally between all of my surviving grandchildren."

6:E. "I direct that my Trustee shall distribute the income arising from said funds at least quarterly."

6:F. "I direct my Trustee to retain the investments which I have made, unless it shall believe a change to be for the best interest of my estate, and in case of an increase in the capital of any company in which I shall hold stock, then I direct my said Trustee to subscribe for my estates' proportion of shares of new stock." (Numbering of each subdivision of paragraph 6, ours.)

The facts are not in dispute. Dr. Powell died on January 19th, 1933. His next of kin and only heirs-at-law were the defendants—his two daughters, Florence Powell Scott and

Helen Powell Favre. Each of these daughters had three minor children at the time of his death. Mrs. Favre's children, John, Helen and William, were twelve, nine and seven years of age respectively; Mrs. Scott's children were Edward (now deceased), William and Florence, twenty, eighteen and seventeen years of age respectively. The daughters and grandchildren were, by proper proceedings, made parties defendants in this cause which is instituted to obtain a construction of the testator's will. Mrs. Scott filed no answer to the bill and a decree *pro confesso* was taken against her. Mrs. Favre joined in the prayer for construction of the will and alleged by way of counter-claim that paragraph 6 thereof violated the rule against perpetuities, and that she was, therefore, entitled to receive an absolute fee and not a life estate in the equal undivided one-half part of Dr. Powell's residuary estate. The complainant and the infant grandchildren joined issue on this counter-claim.

The final decree before us for review was based upon the conclusions of the learned vice-chancellor and provides, *inter alia:*

"2. That the life estates of Florence Powell Scott and Helen Powell Favre, the two daughters of deceased, given under the terms of his [Powell] will are good and valid, and the provisions of said will respecting the creation of said life estates are to be given full force and effect.

"3. That the interest of the defendants Edwin R. Scott, Jr., William Powell Scott, Florence Powell Scott [children of decedent's daughter, Mrs. Florence Powell Scott] and John Powell Favre, Helen Elizabeth Favre and William Michael Favre [children of decedent's daughter, Helen Powell Favre] or the interest of any children of said life tenants hereafter born, in the estate and property of said testator will vest in them upon the death of their respective mothers and that the said will is hereby so construed; and the interest given to the said defendants, under the terms of said will, does not violate the rule against perpetuities.

"4. That there cannot be any distribution of the principal of testator's estate until the death of the life tenants."

Appellant challenges the construction thus given to the language employed in the will. That challenge is rested here, as it was rested below, on the grounds, in the words of appellant, "that the gift of the remainder to the grandchildren after the death of the two daughters is a gift to a class, and that this class comprehends not only grandchildren who were living at the time of the testator's death but also grandchildren who might come into being thereafter; and further that the gift of the remainder to the grandchildren violates the rule against perpetuities, and in consequence this caused an intestacy as to the remainder, there being merely a naked or passive trust in favor of the two daughters, and that trust they are entitled to have reduced to possession."

It may be well, before discussing the question as to whether paragraph 6 violates the rule against perpetuities, to restate the rule. Professor Gray in his merited and recognized work on *The Rule Against Perpetuities (3d ed., 1915) p. 174,* § *201,* restates it so: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." In *McGill* v. *Trust Company of New Jersey, 94 N. J. Eq. 657, 664; affirmed, 96 N. J. Eq. 331,* with certain modifications not here present, the aforesaid definition was adopted by Vice-Chancellor Buchanan. The latter further observes (at *p. 664*) : "That rule requires that all future interests, legal or equitable, in realty [except dower and curtesy and rights of entry for conditions broken] or personalty, which are contingent and indestructible, must be such as necessarily to vest, if at all, within the term measured by the life or lives of a person or persons in being at the time of the creation of the interest and twenty-one years thereafter; otherwise they are invalid and void. Cf. generally, *30 Cyc. tit. 'Perpetuities.'* "

It is accurate, we think, to say that both legal text writers and the courts have experienced little difficulty in framing or stating the rule; the correct application of the rule, however, to a given set of facts does frequently prove to be perplexing and difficult. Thus the mere statement of the rule does not always suggest the answer as to whether it is or is not applicable.

In the process of construing the applicability or non-applicability of the rule we are greatly helped by the sound observation made that "the rule against perpetuities should have been called the rule against remoteness. It is aimed at the control of future interests; it has nothing to do, save incidentally, with present interests. But its name is a constant temptation to treat it as aimed against restraints on the alienation of present interests." *Gray, supra,* preface pages viii and ix. It is, as has been frequently stated, "directed solely against the unlawful postponement of the vesting of estates, and is not applicable to their possession or enjoyment." *Lembeck* v. *Lembeck, 73 N. J. Eq. 427, 429; affirmed, 74 N. J. Eq. 848; Cf. Guarantee Trust Co.* v. *Latz, 119 N. J. Eq. 194, 197.* "If an estate vests within the prescribed period, the postponement of the time of enjoyment beyond the lives in being and one and twenty years thereafter does not contravene the rule against perpetuities." *Trippe* v. *National Newark, &c., Banking Co., 98 N. J. Eq. 462, 465; affirmed, 100 N. J. Eq. 356; Potter* v. *Nixon, 81 N. J. Eq. 338; affirmed, 82 N. J. Eq. 661.* "Thus if land is devised to A, now a bachelor, for life, remainder to his children, as tenants in common, for life, remainder to B, in fee, B's remainder is vested, and is not too remote, although it may not come into possession until a period beyond the limits of the Rule against Perpetuities." *Gray, supra, § 205 p. 176.*

It is the well settled law that courts will make every intendment in favor of vesting the estate. *Clark* v. *Morehous, 74 N. J. Eq. 658, 666; 70 Atl. Rep. 307, 310.* "The policy of the law requires that legacies in all cases, unless clearly inconsistent with the intention of the testator, should be held to be vested rather than contingent." *In re Buzby, 94 N. J. Eq. 151, 153.* Full force, however, should be given to the intent of the testator and that intent must be gathered from the will as applied to the testator's situation by the application of known and tried rules of construction. *Wills* v. *Wills, 72 N. J. Eq. 782; affirmed, 73 N. J. Eq. 733; Coffin* v. *Watson, 78 N. J. Eq. 307; affirmed, 79 N. J. Eq. 643.* "In construing a will the predominant idea of the testator's mind, if

apparent, is heeded against all doubtful and conflicting provisions which might of themselves defeat it." *Peer* v. *Jenkins, 102 N. J. Eq. 235, 238.*

Bearing in mind the above stated principles, we proceed to apply them to the facts of the case at bar. By paragraph 6 of the will the testator created a trust to be divided into two equal parts, with directions that the income thereof be paid to each of his daughters for and during their respective lives. The will then provides as follows: (6-A) "* * * upon the death of either of my said daughters, I direct my said Trustee to divide the trust fund of the daughter so dying into as many equal parts or shares as my said daughter so dying shall leave children her surviving, one share for each child, and to continue holding upon trust the shares of my granddaughters during the term of their natural lives, and to continue holding upon trust the shares of my grandsons until they shall severally arrive at the age of thirty years and to pay the income arising therefrom unto my respective grandchildren after they shall arrive at the age of twenty-one years." (6-C) "* * * In case any of my daughters shall die without issue her surviving, then and in that event I direct that her share of my estate shall be distributed by my Trustee in such manner as my daughter so dying shall by her will direct, but in default of such direction, then I direct the share of my daughter so dying shall be distributed unto her surviving sister or in case her sister shall predecease her, then unto the surviving children of her sister."

Up to this point the will clearly does not fall under the ban of the rule against perpetuities. The gift to the testator's daughters represents the "lives in being." They were in existence at the time of their father's death. The gift to the grandchildren after the death of their mothers is not too remote, as, by the express instruction contained in the will, the grandchildren succeed to the share of their respective mothers at the termination of the life estate of the latter. The testator provided that (6-A) *"upon the death* * * * my said daughters, I direct my said Trustee *to divide* the trust fund into equal shares * * * one for each child * * *"* of

the daughters. (Italics ours.) Upon the death of the daughters, all of the children of the daughters must be in existence. The division among all grandchildren is effective and vests in them at that time. From this flows the conclusion, notwithstanding the fact that the gift is to a class and in that class is included after-born children, that the gifts to all of the grandchildren living at the time of the death of their respective mothers, which is the time fixed for the closing of the class, are obviously not in violation of the rule. The applicable law is stated in *Gray, supra, p. 87, § 110,* as follows:

"Sometimes a remainder is given to a class of persons, *e. g.*, to children, the number of members in which may be increased between the time of creating the remainder and the termination of the particular estate; for instance, on a devise to A for life, remainder to the children of A and their heirs as tenants in common. Here, although it is certain that each child born, or its heirs, will have a share in the estate, that share will be diminished by the birth of every other child of A. *Each child, nevertheless, on its birth is said to have a vested remainder.* The remainder is said to 'open' and let in the after-born children." (Italics ours.)

The vested estates of the grandchildren living at the time of the death of the testator "are subject to being divested or modified as to quantity, only." *Trippe* v. *National Newark, &c., Banking Co., supra* (at *p.* 466). Cf., also, *Clark* v. *Morehous, supra; McGill* v. *Trust Company of New Jersey, supra; Guarantee Trust Co.* v. *Latz, supra.*

Moreover, the postponement of enjoyment of the shares until the grandchildren attain the age of twenty-one years (as to the income) and thirty years (as to the *corpus* to the grandsons) does not defeat the gift, for "if an estate vests within the prescribed period, the postponement of the time of enjoyment beyond the lives in being and one and twenty years thereafter does not contravene the rule against perpetuities. The contention * * * that the testator tied up the principal of his estate for the benefit of his grandchildren, in violation of the rule against perpetuities is not sustained. His chief concern was the support of his children and his grandchildren, the latter until they arrived at mature judgment, and the postponement of enjoyment of the principal

was in furtherance of his solicitude for his grandchildren during a period of possible indiscretion. Such restrictions upon enjoyment are permissible." *Trippe* v. *National Newark, &c., Co., supra.* In accord, *Potter* v. *Nixon, supra; Lembeck* v. *Lembeck, supra; Traverso* v. *Traverso, 99 N. J. Eq. 514; affirmed, Traverso* v. *McMillin, 101 N. J. Eq. 308.*

We are rather satisfied that the testator desired to, and did in fact, vest his grandchildren with their respective interests immediately upon the death of their mothers although he did postpone the enjoyment thereof by them until they would be more qualified to protect their property. That the testator so intended here is forcefully demonstrated by this language of his will. (6-B) "In case any of my grandchildren shall be minors at the time of its mother's death, then I direct my said Trustee to apply the income arising, during its minority from its trust fund toward the education of said minor grandchild." *Cf. Fidelity Union Trust Co.* v. *Rowland, 99 N. J. Eq. 72.*

We have, however, concluded that one portion of the will falls into a different category. The text of the same is restated:

6:D. "And in case of the death of any of my grandsons before attaining the age of thirty years and in case of the death of my granddaughters, I direct that my Trustee shall distribute the trust fund of the grandchild so dying in such manner as said grandchild shall by will direct but in default of such instructions, then I direct that said deceased grandchild's share shall be distributed equally between the remaining brothers and sisters of the grandchild so dying, or in case of no brothers or sisters, then I direct it shall be distributed equally between all of my surviving grandchildren."

A study of the quoted clause, when considered in connection with the other provisions of paragraph 6, makes it readily apparent that the power of appointment by will or the direction for the distribution of a grandchild's share, upon his death, to and among his brothers and sisters, if any, or to the other grandchildren of the testator, are in flat contravention of the rule. Such appointment or distribution may take effect after lives in being and twenty-one years thereafter. It is entirely conceivable that a grandson may die when

twenty-eight or twenty-nine years of age. If, at his death the power of appointment by will were permitted, the vesting of the interest in his appointee would be too remote. Likewise, if a granddaughter be authorized to make a will disposing of her share (she was given only a life estate) she may live the normal expectancy of life, or perhaps longer, and then execute a will pursuant to the power granted. Such appointment would, *a fortiori,* be subject to the vice sought to be avoided by the rule.

"In powers, questions of remoteness are governed by three rules. 1. If a power can be exercised at a time beyond the limits of the rule against perpetuities, it is bad. 2. A power which cannot be exercised beyond the limits of the rule against perpetuities is not rendered bad by the fact that within its terms an appointment could be made which would be too remote. 3. The remoteness of an appointment depends on its distance from the creation and not from the exercise of the power. The first two rules relate to the creation of powers, the third rule to their execution." *Gray, supra,* § *473 p. 397.* "A power given to the unborn child of a living person is void; that is, if it is a power to be exercised by will only, or a special power to be exercised by deed." *Gray, supra,* § *477 p. 400.*

It therefore becomes necessary to determine what effect the invalid portion of the will has on the entire will.

In *McGill* v. *Trust Company of New Jersey, supra,* Vice-Chancellor Buchanan expressed the rule as follows (at *p. 669*) : "However, the invalidity of an attempted ultimate gift * * * by no means necessarily vitiates the entire trust. The general rule is, I take it, rather the other way. The provisions of the will are to be disturbed no further than is absolutely required by the existence of the rule against perpetuities. * * *"

"Where a gift is made to a trustee to accumulate the income thereof until a certain time and then pay over the *corpus* and accumulated income, if the ultimate gift is invalid, the whole trust is held invalid, since the trust to accumulate income, although not itself void under the perpetuity rule, is merely incident to and in aid of the ultimate gift; if there had been

no such ultimate gift, there would have been no direction to accumulate income. * * * *But the situation is very different where the trust is for the purpose of supporting several independent gifts, whether concurrent or consecutive. In such case, unless it be impossible so to do, the several gifts are to be separated and those preserved which do not violate the rule."* (Italics ours.) *Cf. Stout* v. *Stout, 44 N. J. Eq. 479.*

If it is impossible to separate gifts which are valid and those which are void, or if the prior valid gifts are merely incidental to the effectuation of a main purpose which is void, as in *Hewitt* v. *Green, 77 N. J. Eq. 345, and Graves* v. *Graves, 94 N. J. Eq. 268,* the entire will must fall. *McGill* v. *Trust Company of New Jersey, supra.* An apt illustration found (at *p. 670*) in the *McGill Case* may be mentioned. * * * "Where a trust is created to provide a life estate to A, and a subsequent life estate to B, and then a remainder to C, the invalidity of the gift to C will not vitiate the prior gifts to A or B. So, also, if the gift to B were a term of years instead of a life estate. And it can make no difference if the gift following B's life estate or term for years is a contingent remainder to B himself, instead of a third party, C. The gifts are of separate, successive estates."

Controlled by the rationale of our decisions in the aforesaid cases, we are of the opinion that the taint of the invalidity of subdivision 6-D does not affect or legally destroy the remaining provisions of paragraph 6. This court will not disturb a will to a greater extent than is imperative. It does not appear that the invalid section is so vital to the entire paragraph as to make the remaining sections merely "incidental to and in aid of it." In fact, the conclusion is irresistible that the main purpose, the predominant controlling desire and intent of the testator, can be fulfilled without regard to the invalid portion thereof. In such manner (subject to certain contingencies set forth in the will) his daughters take a life estate and upon their deaths, their children, respectively, succeed to their interests, the granddaughters of the testator receiving their share of the income for life, upon arriving

at the age of twenty-one years, and the grandsons receiving their shares of the income upon arriving at the age of twenty-one years of age and until reaching thirty years of age, when they enjoy their shares of the *corpus*. As to the shares of the *corpus* not bequeathed under the will to the grandsons (the granddaughters have only a life interest in the income), an intestacy necessarily results.

This cause is remanded to the court of chancery where a decree will be entered pursuant to the views expressed in this opinion, and as so entered, it is affirmed.

*For modification in accordance with opinion of the court—* THE CHIEF-JUSTICE, LLOYD, BODINE, HEHER, PERSKIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 9.

*For modification not in accordance with opinion of the court—*PARKER, CASE, DONGES, HETFIELD, JJ. 4.