BURLINGTON COUNTY TRUST COMPANY, SUBSTITUTED TRUSTEE UNDER THE WILL OF MARIE LOUISE BINNEY, PLAINTIFF-RESPONDENT, v. PRINCESS ANNA DI CASTELCICALA OR MARIANNA BICCADILLI DI BOLOGNA ET AL., DEFENDANTS-RESPONDENTS; ALEXANDER KINGSLAND AND MARCHESA CATTANEO, DEFENDANTS-APPELLANTS.

Argued March 7, 1949—Decided May 9, 1949.

*Mr. Frank A. Mathews, Jr.,* argued the cause for the plaintiff-respondent.

*Mr. Alexander C. Wood, 3rd,* argued the cause for Princess Anna di Castelcicala or Marianna Biccadilli (Baccadilli) di Bologna, defendant-respondent.

*Mr. J. Albert Homan* argued the cause for defendants-respondents Laura Mariesol Henriette de la Tour di Castelcicala and Don Pietro Paolo di Castelcicala.

*Mr. John D. McMaster* argued the cause for the appellants.

The opinion of the court was delivered by

CASE, J.   The bill seeks a construction of a portion of the sixth paragraph of the will of Marie Louise Binney, deceased,

with particular respect to the rights of the grandchildren and the great-grandchildren of the testatrix and the incidental interest of the widow of a grandchild.

The paragraph provides:

"Sixth: I give and devise the rest and residue of my property and estate, and likewise all I have the power to dispose of by will, to my husband, his heirs and assigns, as sole executor and Trustee, in Trust, to enjoy the net income during his life free from all debts, contracts and control and the principal at his death to be held continued in trust for the benefit of my children. The net income to be divided equally between them during their life, free from all debts, contracts and control. *On the death of either of my children, the principal to be held still in trust, for the benefit of my grand-children; her share of the net income to be paid to her child or children during their life, free from all debts, contracts and control, with the power of disposal by will of the mother's share of the principal.* Should neither child survive her father, I give him the disposal by will of the principal of my estate; the issue of a deceased child, nevertheless, in any case *to the* parents share. In case of the decease before me of my husband and of both my children, leaving no issue surviving them, I give the net income of my estate to my sons-in-law, Franklin Woodward Earl and Prince Camporeale, to be equally divided between them during their lives. At the decease of one of them the whole income to be given to the survivor and at the death of both, the property which I may have received from my husband, or which I may have the disposal of under his will shall be divided among his heirs. In the same case any portion of my property which I have received from my father, of which under his will I may have the disposal, shall be given to his heirs. In case my husband should not survive me, or, if he should, at his death, I appoint as my Executors and Trustees, my daughters, Marie and Florence, Mr. Joseph B. Townsend, (my Trustee under my father's will) and the Burlington City Loan and Trust Company. I desire my will to be probated and administered in New Jersey."

The estate consists entirely of personalty. Testatrix died January 26, 1908, survived by her husband and by her daughters, Marie and Florence. Her husband died in 1909, also survived by the two daughters. Marie died November 22, 1929, survived by her only child, Binney W. Earl, presently alive, unmarried and an adjudged lunatic. Florence died in 1944, having borne two children, Albert Alexander Kingsland and Anna, referred to in the papers as Princess Anna. Albert Alexander Kingsland died in 1923, thus predeceasing his mother, Florence; he was survived by his wife, Marchesa

Cattaneo, and his son, Alexander Kingsland, both of whom are still living and are the appellants in this cause. Princess Anna, the daughter of Florence and the granddaughter of the testatrix, is still living, as are also her two children, Don Pietro and Laura Mariesol.

Our first duty is to determine the intent of the testatrix, an intent to be drawn from the will *as written,* illuminated by such circumstances as existed at the date of the execution. We are not to guess what the testatrix would have done if she could have foreseen what would happen after her death, or to frame a document which we think would be a fitting last will and testament. *Blanchard v. Blanchard,* 116 *N. J. Eq.* 435 (*Ch.* 1934); affirmed on the opinion below, 122 *N. J. Eq.* 372 (*E. & A.* 1937). The essential questions which emerge are (1) the nature and extent of the gifts to the grandchildren, (2) the legality of the power to dispose by will and (3) the results which flow from the determination of those inquiries.

The outstanding feature of the will is that the testatrix labored to preserve the principal of her residuary estate, entire and undivided, and that she stated, iterated and reiterated limitations upon the use of the income. The principal was to be held intact during her husband's lifetime; it was likewise to be held intact during the lifetime of her children with a division of the income; and even after the death of her children the principal was still to be held intact and the respective child's share of the income was to be paid to the child's child or children "during their life, free' from all debts, contracts and control"—the combination of plural possessive pronoun and singular noun suggesting a collective interest in a joint tenancy. Only when it came to the exercise of the power by will was there to be a division of the principal, and the division so indicated was not linked to the number of those who potentially were given the income during life. There are no words of earlier severance, distinction of plurality of interests. The disposition was not to be of the prorated share of a single grandchild but "of the mother's share." The purpose of the testatrix to preserve the

integrity of her estate beyond the lifetime of an individual beneficiary, with consequent survivorship, persists in the provisions contingent upon the death of her husband and her two children without issue before her own death, namely, the gift of the net income to her sons-in-law, Franklin Woodward Earl and Prince Camporeale, to be equally divided between them during their lives and upon the death of either the whole income to go to the survivor, leaving the testatrix intestate as to the remainder of her property with the exception of such property as she had received from her husband, over which she had the power of disposal under his will, and such as she received from her father, over which, under the latter's will, she had the power of disposal.

· There is no indication of an intent on the part of the testatrix that the life estates created for the grandchildren should be continued to the great grandchildren. No gift could go to any of the great-grandchildren under the will unless through the exercise by the appropriate person of the power to appoint; and even then the gift would arise, not from the present will, but from the exercise of the power. The grandchildren of the testatrix, Albert Alexander Kingsland, Princess Anna and Binney W. Earl, were all living at the time of the death of the testatrix, but the possibility of the birth of additional grandchildren after the death of the testatrix is conceded. This possibility, coupled with the wording of the will, favors the conclusion that the testatrix meant the gift for life after the life estate of her daughters to go to her grandchildren as a class flowing from either daughter, comprehensive of after-born grandchildren if there should prove to be such; the gift as to any grandchild to terminate necessarily at his death because the gift was merely of a life estate. Further, we believe the testatrix intended the gifts to the children of her respective daughters to be in joint tenancy if the children of a daughter should number more than one and that the survivor should have the power to dispose "by will of the mother's share of the principal."

The application of that scheme to the facts of the case is that it gave to Binney W. Earl the full income from one-

half of the estate of the testatrix during his lifetime and the power of disposition, if he were competent to exercise the power, of one-half of the principal by will at his death, and to Albert Alexander Kingsland and to Princess Anna, in equal shares, the income from one-half of the estate during their joint lives, the entire income therefrom to the survivor upon the death of either and the right to the survivor to dispose by will of one-half the principal of the estate. Inasmuch as Albert Alexander Kingsland is dead the present right to the income and the power to dispose by will of one-half of the principal of the estate goes to the survivor, Princess Anna. The appellants, Marchesa Cattaneo and Alexander Kingsland, respectively the widow and child of the deceased Albert Alexander Kingsland, are shut out from all interest under the will because they have no claim other than through that of the husband and father, whose interest terminated at his death. Don Pietro and Laura Mariesol, children of Princess Anna, and great-grandchildren of the testatrix, have no rights under the will. That, we conclude, is the out working of what the testatrix intended; and we are of the opinion that, except for the gift of the power, the arrangement constitutes a lawful disposition.

The rule against perpetuities is not violated by the gifts to the grandchildren. That rule as applied in this State to the gift of a property interest is that "no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." *Camden Safe Deposit and Trust Co. v. Scott*, 121 *N. J. Eq.* 366 (*E. & A.* 1937). If it be considered that the testatrix in saying "my children" specifically and exclusively referred to her daughters, Marie and Florence, then there is no infraction against the rule because it is obvious that when a daughter is living at the mother's death and the mother leaves a gift by will to the children of that daughter, all such children must be born, and therefore the interest as to each must vest, within the period limited by the rule. But it is doubtful whether the record will with certainty sustain that assumption, and we·prefer not to rest our reasoning thereon. The

legacy is sustainable on the theory of class gifts which vested in season, whether that vesting took place at the death of the testatrix or at the death of one or the other of her daughters. A gift to a class has been defined as a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or some other definite proportions; the share of each being dependent for its amount upon the actual number. *Clark v. Morehous,* 74 *N. J. Eq.* 658 (*Ch.* 1908). The gift of life estates to the grandchildren was really two class gifts, one to the children of each daughter; and there were members of those classes living at the death of the testatrix and continuously thereafter. In them the gift vested, subject to being opened if the occasion required. *Cf. Camden Safe Deposit and Trust Co. v. Scott, supra.*

The existence and the identity of grandchildren were known to the testatrix at the time she executed the will, eight and one-half months before her death, but she specified none of them either by name or otherwise. The gift would need to open upon the birth of an after-born grandchild, an event which might happen, and, because the interest was for life only, to close against a grandchild who died, an event which was bound to happen sometime. The gift to that extent was subject to the contingency of events. There were uncertainty as to future births, uncertainty as to whether the grandchildren living at the testatrix' death would be living at the mother's death to enter upon the enjoyment of the gift, certainty that each grandchild's interest would sometime be terminated by death but uncertainty as to the chronological order leading to the ending of the class. Those incidents negative the idea that there might be a division of the principal before the gift is finally ended, and the limitation of the gift to a life estate negatives the idea that the income payable to a grandchild during his life should pass to his children upon his death.

The gift to the grandchildren is original rather than subtitutionary (as *e. g.,* in *Camden Safe Deposit, etc., Co. v. Fricke,* 99 *N. J. Eq.* 506 (*Ch.* 1926)). It is successive

to but not in substitution of the gifts to the decedent's daughters and therefore does not come precisely within the decisions, such as *Redmond v. Gummere,* 94 *N. J. Eq.* 216 (*E. & A.* 1922); *Camden Safe Deposit and Trust Co. v. Fricke, supra; Crane v. Bolles,* 49 *N. J. Eq.* 373 (*Ch.* 1892); *Harris v. Tichenor,* 28 *N. J. Eq.* 328 (*Ch.* 1877), and *Hutchinson v. Exton,* 53 *N. J. Eq.* 688, 690 (*E. & A.* 1895), which support the proposition that where there is a contingent substitutionary gift to "the children" of a deceased parent, the gift being to the children as a class, and there are no words of severance or other indication of a contrary intent, they take as joint tenants and hence with the right of survivorship. But there is a line of cases, *Camden Trust Co. v. Birch,* 131 *N. J. Eq.* 542 (*Ch.* 1942); *Noe's Administrator v. Miller's Executors,* 31 *N. J. Eq.* 234 (*Ch.* 1879), which, consistently with the general trend of the aforementioned decisions, hold that where a legacy is given to two or more persons as a class, without more, and there is nothing, such as words of severance, to indicate the contrary the persons take as joint tenants, with survivorship. The incident of survivorship exists by implication in a joint tenancy; *New Jersey Title Guarantee & Trust Co. v. Archibald,* 90 *N. J. Eq.* 384 (*Ch.* 1919); affirmed, 91 *N. J. Eq.* 82 (*E. & A.* 1919). It is constantly to be remembered that the gift to the grandchildren is not of the whole remainder. It is of a life estate only; and it follows a life estate, which also followed a life estate, all of them subject to limitations; and therefore it is at variance with many decisions which otherwise would be in point.

We are of the opinion that as the gift of the life estates was to the grandchildren in classes and there are no words of severance or other indication of a testamentary intent to the contrary, the grandchildren take as joint tenants, with the incident of survivorship.

It is urged that the gift to the grandchildren accompanied by the power of disposition by will should follow what is said to be the pertinent rule with respect to real estate and be held to be a gift absolute. But that is not the rule even

as to real estate. As a rule of construction the principle is entirely settled that where lands are devised in the first instance in language indeterminate as to the quantity of the estate from which an estate for life would result by implication and words adapted to the creation of a power of disposal without restriction as to the mode of execution are added, the construction will be that an estate in fee is given; but that where the quantity of the estate of the taker is expressly defined to be for life, the added words will be construed to be the mere gift of a power of disposition. *Kent v. Armstrong,* 6 *N. J. Eq.* 637 (*E. & A.* 1850); *Downey v. Borden,* 36 *N. J. L.* 460, 466 (*E. & A.* 1872); *Cantine v. Brown,* 46 *N. J. L.* 599 (*E. & A.* 1884); *Kellers v. Kellers,* 80 *N. J. Eq.* 441 (*E. & A.* 1912); *McDermott v. Zimmerman,* 89 *N. J. Eq.* 215 (*E. & A.* 1918); *Trafton v. Bainbridge,* 125 *N. J. Eq.* 474 (*E. & A.* 1939). If plain words clearly stated are to be accorded the meaning with which they are constantly used, it is certain that the gift to the grandchildren is expressly defined to be for life.

██ As to the vesting of a power. The word "vesting" has numerous uses and meanings. One may be vested with authority to act and so have a vested power as contrasted with a contingent power, and there are decisions and textbooks which use that phraseology. But we consider that the word in its technical sense and in its well established and well recognized meaning with respect to property and property rights has no true application to a power of appointment by will. A power, as we are using the expression, has to do with property; but it is not property and it is not an interest in property. A power is a liberty or an authority which operates upon a vested estate or a vested interest, not being derived out of such estate or interest but overreaching or superseding it. *In re Vanatta,* 99 *N. J. Eq.* 339, 345 (*Prerog. Ct.* 1926); *The Pennsylvania Co., etc., Annuities v. Kelly,* 134 *N. J. Eq.* 120, 131 (*Prerog. Ct.* 1943). There may be doubt as to when an interest in property vests, whether at the creation of the interest or at some later date, but usually there is no doubt about when a power to appoint is created; and there is no

doubt in this case. The power was created by the will of Mrs. Binney which speaks as of the date of death, January 26, 1908. The class aspects of the gift, the absence of any specification of individuals either in the gift or the creation of the power and other circumstances definitely distinguish the case from *Lindsley v. First Christian Society*, 37 *N. J. Eq.* 277 (*E. & A.* 1883), where the power to appoint was given singly and specifically to the testator's daughter.

█ A power is subject to the rule against perpetuities and is, when created by will, void unless, by its authorizing language, it must be exercised within a life or lives in being and twenty-one years thereafter. The language used by Professor Gray in his work on *"The Rule Against Perpetuities,"* (*3rd ed.*), § 515, is that "No appointment made under a power is good, unless at the time of the creation of the power it was certain that if the appointment was ever made the appointee's interest would vest, if at all, within twenty-one years after lives then in being." If a power can be exercised at a time beyond life or lives in being plus twenty-one years from its creation, it is bad. If title to property or an interest to property does not vest within life or lives in being plus twenty-one years after the creation of the interest, it does not vest at all. With a power, the admeasurement is from creation to *exercise*. With title, it is from creation to *vesting*. *Cf. Simes, Law of Future Interests*, § 538; 41 *Am. Jur.*, § 19, p. 64. If it be, as we have found, that the gift of the life estates to grandchildren was not to living individuals but to a class which might be augmented at an undetermined date after the testatrix' death and that the estates so created were joint, with the incident of survivorship, it follows that the death of the survivor and therefore the exercise of the power of disposition might come at a period too remote to be effective; and that spells the invalidity of the power. *Cf. In re Hargreaves* (*English Court of Appeal, Chancery Div.* 1890) *Reports, New Series Volume 59 General Division.*

We note that in *Camden Safe Deposit & Trust Co. v. Scott, supra,* in which it was held that the power there given to grandchildren to dispose by will was void upon the ground

mentioned above, namely, that the exercise of the power might take effect after lives in being and twenty-one years thereafter, the power was given to each grandchild specifically to dispose of a share of the principal which had been set aside from the main fund and apportioned to that grandchild. There was a severance. The facts in our own case give a stronger foundation for the enforcement of the rule for the reason that here no severance was directed and no severance has been made.

While it is true that the court will endeavor to so construe a will as to prevent intestacy, it is equally true that the court will not substitute or supply language to prevent it. *Woodruff v. White,* 78 *N. J. Eq.* 410 (*Ch.* 1911); affirmed, 79 *N. J. Eq.* 225 (*E. & A.* 1911). Mrs. Binney died intestate as to her residuary estate beyond the life estates of the grandchildren. The intestacy will operate from the life estate of Binney W. Earl as to one-half of the estate and from the life estate of Princess Anna, the survivor of the children of Florence, as to the remaining half; this, because it is clear that the testatrix meant the principal to be divided and to go to separate ways at those stages.

The will of Albert Alexander Kingsland, printed without authority in appellants' appendix, has not been considered. It has no bearing upon the issues as decided. The propriety of it under other circumstances need not be discussed.

Our decision in some respects agrees with and in some respects differs from the decree in Chancery; therefore that decree will need to be modified. The record will be remanded for further proceedings not inconsistent with this opinion.

BURLING, J. (Dissenting.) I am unable to agree with the majority of the court in their construction of the interest given to the grandchildren of the testatrix. That interest is defined in the majority opinion to be that of concurrent life estates in joint tenancy with a power of appointment of the remainder in the survivor of the class. It will be observed that there is not one class, but two, each class consisting of the child or children of a daughter of the testatrix. The

majority recognize this but do not consider it of significance in determining the plan of the will.

The proper construction, I believe, is that each class of grandchildren took remainders in severalty and not as joint tenants. Since there were grandchildren of each class *in esse* at the time the will took effect, it follows that the remainders were vested in them subject to being divested in part as other grandchildren of testatrix were born, *Adams v. Ross,* 30 *N. J. L.* 505, 513 (*E. & A.* 1860), an event which never happened. That the remainders were for life only and not in fee does not alter the situation. Such estates in remainder for life have been recognized as valid and vested estates. 2 *Bl. Com.* *164; 2 *Reeves, Real Prop.* (1909) 1155; 3 *Walsh, Commentaries on the Law of Property* (1947), *p.* 92. An example of such a remainder is to be found in *Adams v. Ross, supra.* The sole significance of the fact that the remainder is for life is that the actual enjoyment of the estate is uncertain. But, as the authorities specifically point out it is the uncertainty of the *right* to enjoyment the instant the particular estate determines that makes a remainder vested or contingent. *Cody v. Fitzgerald,* 2 *N. J.* 93 (*Sup. Ct.* 1949); *Hopper v. Gurtman,* 126 *N. J. L.* 263, 272 (*E. & A.* 1940); *King v. First National Bank of Morristown,* 135 *N. J. Eq.* 319, 323 (*Ch.* 1944).

The opinion of the majority fails to distinguish between the normal termination of any life estate and a joint tenancy. The concept of a class gift is not dependent upon the quality of the estate created. *Simes, Future Interests* (1936), § 369; 57 *Am. Jur.,* "Wills," § 1257, *p.* 830; *Restatement, Property c.* 22, *pp.* 1445-1447. The real question is whether testatrix intended the power to be exercised by the longest liver of the class or intended each member to have the power.

The opinion of the court relies upon *Camden Trust Co. v. Birch,* 131 *N. J. Eq.* 542 (*Ch.* 1942), and *Noe's Adm'rs v. Miller's Ex'rs,* 31 *N. J. Eq.* 234 (*Ch.* 1879), as authorities for the decision that the remainders are held in joint tenancy. Passing by the fact that both of these cases are in the former Court of Chancery and hence are not binding upon us as

precedents, an examination of the *Noe case,* upon which the *Camden Trust Co. case* depends, reveals that it does not involve a true class gift but a gift to a mother and her children, involving an example of the rule in *Wild's Case,* 6 *Coke* 16b, 1 *E. Cas. Abr.* 181 (1599). The import of the decision in the *Noe case* is that *R. S.* 46:3–17, which altered the common law presumption that a gift to two or more persons is presumed to be a joint tenancy does not apply to personal property. I do not believe the *Noe case* to be an authority herein, for the reasons already expressed; but if it is so considered, it is to be remarked that the court pointed out (at *p.* 236) "slight evidence to confer distinct interest will operate as a severance, and the legatee will take as tenants in common." In the instant case there is more than "slight evidence" to show an intent to bestow the gift in severalty. To cite but one example the testatrix directed that should both of her children predecease their father, he was to have the power of disposal of the principal, "the issue of a deceased child nevertheless in any case to take the parent's share." Such a gift is a gift in severalty to such descendants as will take the estate under the laws of descent and distribution. *Hoyt v. Orcutt,* 1 *N. J.* 454 (*Sup. Ct.* 1949); *Redmond v. New Jersey Historical Society,* 132 *N. J. Eq.* 464, 471 (*E. & A.* 1942); 3 *Walsh, op. cit.,* § 319, *pp.* 255 *et seq.* The majority opinion does not give effect to this clause and holds the interests to be joint. This results in the grandchildren's interest being joint under one set of circumstances, namely, if the daughters of testatrix survived their father, but several under another set of circumstances, namely, if the daughters of the testatrix predeceased their father. It is unlikely that the testatrix intended this inconsistency.

Since my construction results in each grandchild having a power of disposal of a share of the principal, it follows that the Rule against Perpetuities was not violated as to those grandchildren *in esse* when the will took effect. In this respect the case of *Camden Safe Deposit & Trust Co. v. Scott,* 121 *N. J. Eq.* 366 (*E. & A.* 1937), was in error in failing to distinguish between those grandchildren *in esse* when the

will took effect and those born afterwards. See *Gray, Perpetuities* (4th ed. 1942) p. 411 n. 3 and p. 472, n. 2, criticising the case. It should be overruled in part in this respect with the result that in the instant case each grandchild had a valid power inasmuch as they were all *in esse* when the will took effect.

The case of *In re Hargreaves,* 43 *Ch. Div.* 401 (*British Court of Appeal,* 1890), relied on by the majority does not support the majority in the instant case. The will there under construction clearly gave a power of appointment to *"the longest liver* of them my said sisters Mary and Eliza and their children."* (Emphasis supplied.) I believe the *Hargreaves case* demonstrates what is necessary to incorporate in a will in order to arrive at the result the majority in the instant case reached by interpretation.

Since under this construction each grandchild was given a power of appointment over a portion of the principal, with no gift over in default of appointment, it follows that upon the death of a grandchild failing to exercise the power the testatrix died intestate as to that portion. In this respect it becomes necessary to obtain proof of the execution of the will of Albert Alexander Kingsland who died in 1923 leaving a purported will attempting to exercise this power. Proofs should be received and a decision should be made as to the validity *vel non* of this will. For instance it does not appear from the record to have been executed in compliance with the law of this State, *R. S.* 3:2–3. If not its deficiencies should be ascertained. No opinion is expressed as to whether they are such that equity will aid them. Refer to *Clapp, Wills and Administration in New Jersey* (1937), p. 323.

There is another question not raised either in the court below or in this court which calls for critical examination on a rehearing. It clearly appears from the context of the clause under construction, where it is mentioned twice therein, that a portion of the trust estate established was composed of property over which the testatrix exercised a power of appointment by the will of her father. Just what effect this question will have upon the estate cannot be determined from the

present state of the record. It may well be that as to that portion the gift to the grandchildren both of the power and the remainder for life would be void unless the grandchildren were *in esse* at the death of the father. Refer to *Camden Safe Deposit & Trust Co. v. Scott, supra,* at *p.* 375. The facts essential to the disposition of this question should be determined regardless of whether it was in issue below or not. Compare *Scott v. Stewart,* 1 *N. J.* 60.

I would reverse the decree and remand the cause for further proceedings consistent herewith.

Mr. Justice Heher authorizes me to say that he agrees with the views expressed herein.

*For modification*—Chief Justice VANDERBILT, and Justices CASE, WACHENFELD and ACKERSON—4.

*For reversal*—Justices HEHER and BURLING—2.