10 N.J. Super. 363 (1950)
76 A.2d 705
AROLINE P. WRIGHT, DOROTHY P. SLADE AND BARBARA A. PITMAN, PLAINTIFFS,
v.
RAE E. RENEHAN, ET AL., TRUSTEES UNDER THE LAST WILL AND TESTAMENT OF AROLINE C. GOVE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 5, 1950.
*365 Mr. Hugh D. Wise, Jr., for the plaintiffs.
Messrs. Riker, Emery & Danzig (by Mr. Charles Danzig), for the defendant trustees.
Mr. Malcolm D. Watson, for the defendant infant remaindermen.
HANEMAN, J.S.C.
On August 29, 1924, Aroline C. Gove executed a deed of trust of certain real estate in Princeton, New Jersey, consisting of a parcel of land, with the buildings thereon. The pertinent provisions thereof provide that:
"First. To permit my daughter Mary Pitman to use, occupy and improve said premises or to receive the rents and profits therefrom *366 for and during the term of her natural life, she paying all taxes and other charges and keeping the premises insured and in good repair and condition.
"Third. Upon the death of my said daughter, Mary Pitman, my daughter Lydia P. Gove of said Salem shall succeed to the Trusteeship hereunder and the title to the Trust property shall thereupon become vested in her without any further action whatsoever and she shall have all the powers above set forth; and thereafter the Trustee hereunder shall permit the children of my said daughter Mary Pitman, or in case of disagreement, such of said children as said Trustee may determine, to use, occupy and improve said real estate, they paying all taxes, and other charges and keeping the premises insured and in good repair and condition, or in case said real estate shall be sold, then to pay the net income from the property held in trust hereunder to said children in equal shares, for and during the terms of their natural lives and the life of the survivor of them, the issue of any deceased child to take the parents share by right of representation.
"Fourth. Upon the death of the last surviving child of my said daughter Mary Pitman to convey and pay over the principal of the trust property held hereunder to the issue of my said daughter Mary, one share for each child, the issue of each deceased child to take the parents share by right of representation. In case all of said children shall have deceased without leaving any issue surviving them, then said trust property shall vest in and become the individual property of my daughter Lydia P. Gove, discharged of all trusts and without any further action whatsoever." (Italics supplied by the court.)
At the time of the establishment of this trust, the life tenant, Mary Pitman, daughter of the settlor, was 32 years of age and then the mother of one child, Aroline Pitman, now Wright. Two other children were thereafter born to the life tenant, namely, Barbara Pitman in 1925 and Dorothy Pitman, now Slade, in 1927.
The life tenant, Mary Pitman, died in 1934, survived by her three children, all of whom are the plaintiffs in this action. The married plaintiffs have three children, all infants, great grandchildren of the settlor, and are the remaindermen under the deed of trust. They are defendants in this action.
In 1939, Aroline C. Gove, the settlor, died testate, disposing of her residuary estate in trust. The beneficiaries of this trust and the trustees are also defendants.
The plaintiffs herein (secondary life tenants) agree that the Princeton property should be sold, and there is available *367 a purchaser who is willing to acquire same, provided that the validity of the trust deed is established by appropriate proceedings and a trustee qualified to make good title. (It would appear that the office of successor-trustee in favor of the settlor's daughter, Lydia P. Gove, effective upon the death of her sister, Mary Pitman, is vacant.) The issues as stated by the plaintiff are as follows:
1. Is the deed of trust valid in all respects?
2. Is the deed of trust invalid in part, but valid and effective in part?
3. Is the deed of trust invalid in toto?
The pivotal question propounded necessarily and patently is, whether the deed of trust, in whole or in part, violates the rule against perpetuities. If the answer to this propounded inquiry is in the affirmative, a necessary corollary inquiry is the present disposition of the property here involved.
At the outset, although perhaps academic, it might be well to restate the rule against perpetuities. Professor Gray, in The Rule Against Perpetuities, 4th Ed., p. 191, states it as follows:
"No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest."
In McGill v. Trust Company of New Jersey, 94 N.J. Eq. 657, at 664, 121 A. 760; modified in 96 N.J. Eq. 331, 125 A. 108, the court amplified and explained the rule in the following language:
"That rule requires that all future interests, legal or equitable, in realty (except dower and curtesy and rights of entry for conditions broken) or personalty, which are contingent and indestructible, must be such as necessarily to vest, if at all, within the term measured by the life or lives of a person or persons in being at the time of the creation of the interest and twenty-one years thereafter; otherwise they are invalid and void."
See also Camden Safe Deposit, &c., Co. v. Scott, 121 N.J. Eq. 366, 189 A. 653; Graves v. Graves, 94 N.J. Eq. 268, 120 A. *368 420; Clark v. Union County Trust Co., 127 N.J. Eq. 221, 12 A.2d 365; Guaranty Trust, &c., v. N.Y. Community Trust, 139 N.J. Eq. 144, 50 A.2d 161, 141 N.J. Eq. 238, 56 A.2d 907; affirmed, 142 N.J. Eq. 726, 61 A.2d 239; The Pennsylvania, &c., Co. v. Robb, 118 N.J. Eq. 529, 180 A. 410; affirmed, 123 N.J. Eq. 232, 196 A. 741; Tompkins v. Pryor, 142 N.J. Eq. 523, 60 A.2d 801; Marx v. Rice, 3 N.J. Super. 581, 67 A.2d 918.
The test of whether a given state of facts violates the rule, is whether the possibility that the period covered by a life or lives in being and twenty-one years thereafter may be exceeded, and not the certainty or even the probability that it will be exceeded, in a given trust. Graves v. Graves, supra; McGill v. Trust Company of New Jersey, supra; Gillen v. Hadley, 106 N.J. Eq. 286, 150 A. 779; Burlington County Trust Co. v. Castelcicala, 2 N.J. 214, 66 A.2d 164; Schumacher v. Howard Savings Institution, 128 N.J. Eq. 56, 15 A.2d 107; affirmed, 131 N.J. Eq. 211, 23 A.2d 581; Marx v. Rice, supra; First Camden, &c., Trust Co. v. Collins, 114 N.J. Eq. 59, 168 A. 275; Coleman House, Inc. v. City of Asbury Park, 129 N.J. Eq. 399, 19 A.2d 889.
Otherwise stated, the rule against perpetuities has been paraphrased as a "rule against remoteness." It is aimed against the control of future interests; it has nothing to do except incidentally with present interests. Gray, Rule Against Perpetuities, 4th Ed., preface, p. X. It is a rule invalidating interests which vest too remotely. The rule is only applicable to the vesting of estates and not their enjoyment. If an estate vests within the time limited by the rule, then the rule is not violated. It has been stated that if an estate vests within the prescribed period, the postponement of the enjoyment beyond the lives in being and twenty-one years thereafter does not contravene the rule. Camden Safe Deposit, &c., v. Scott, supra; Schumacher v. Howard Savings Institution, supra.
In ascertaining whether a gift or trust is violative of the cited rule, the donor's or creator's intention must be first *369 ascertained. Burlington County Trust Co. v. Castelcicala, supra, at p. 218.
It is of no moment whether the trust is testamentary or inter vivos. In the former case, the death of the testator is the point from which the time should be computed, since the trust then comes into existence. In the latter case, the date of the creation of the trust is the fundamental element for the same reasons. Simes, Law of Future Interests, § 494; 41 Am. Jur. 64, § 19; 48 C.J. 942, § 8; Hewitt v. Green, 77 N.J. Eq. 345, 77 A. 25.
With the above cardinal and basic principles in mind, it becomes necessary to analyze the particular instrument in question.
There is no doubt that the estate for the life of Mary Pitman is valid. Upon her death, the creator vested title in Lydia P. Gove as trustee, upon the condition that if any of settlor's grandchildren desire, they may occupy the premises conveyed or, in case of the sale thereof, to pay the net income from the proceeds to said grandchildren or their issue, until the last surviving grandchild shall have died. Upon such death the ultimate remainder becomes vested in settlor's great grandchildren.
A more succinct statement of the effect of the deed of trust is that there was a gift by Aroline C. Gove to her daughter, Mary Pitman, for life, and at her death a gift to Lydia P. Gove, in trust for settlor's grandchildren for life, with a gift of the remainder, upon the death of her last surviving child, to her great grandchildren.
At the time of the creation of the trust, Mary Pitman had one child living, Aroline. Subsequently, she bore two more children, Barbara and Dorothy.
Insofar as the gift for life to the children of Mary Pitman is concerned, we have a gift to a class. This class is open until the contingency, i.e., the death of Mary Pitman, occurs. It is not until this happening that the members of the class are finally ascertained. Technically, however, there having been one of the class in esse at the time of the creation of the *370 trust, the gift is deemed vested subject, of course, to being divested or modified as to quantity only. McGill v. Trust Company of New Jersey, supra; Trippe v. National Newark, &c., Banking Co., 98 N.J. Eq. 462, 131 A. 162; affirmed, 100 N.J. Eq. 356, 134 A. 919; Clark v. Morehous, 74 N.J. Eq. 658, 70 A. 307; Guarantee Trust Co. v. Latz, 119 N.J. Eq. 194, 181 A. 645; Camden Safe Deposit, &c., v. Scott, supra.
It follows that the children of Mary Pitman were vested within the prescribed period, since they must be ascertained at her death. The measuring life in being is that of Mary Pitman. That the enjoyment of the interest of these children may extend beyond the period provided in the rule does not make the gift obnoxious so long as it vests within the required time.
The gift of the remainder to the great grandchildren of the settlor, however, is void. Here the contingency upon which they become vested is the death of the last surviving grandchild of the settlor. The measuring lives would then be those of Mary Pitman, the daughter of the settlor, and her children, the grandchildren of settlor. Conceivably, there might be children born to Mary Pitman after the creation of the trust. These latter would not be lives in being at the inception of the interest.
The deed shows a clear intent on the part of the creator to provide a trust not only during a period measured by the lives of her daughter and one grandchild living when the deed was executed, but an intent as well to create a trust which would continue during the lives of other grandchildren who might be born to Mary Pitman subsequent to the creation of the trust. As a result, the ultimate vesting of the remainder in settlor's great grandchildren could be postponed beyond lives in being at the creation of this interest.
Although it has been held above that there is no violation of the rule resulting from the possibility of an enjoyment for a period beyond that measured by lives in esse at the inception *371 of the trust and twenty-one years thereafter, this very possibility makes the vesting of the remainder violative of the rule. The gift of the remainder to the great grandchildren is therefore void.
Having held that the trust is valid insofar as Mary Pitman and her children are concerned, and invalid as to its other provisions, it becomes necessary to determine who is vested with title to the realty involved.
When a part only of a gift is invalid by reason of the rule against perpetuities and the invalid limitation is an essential part of the general scheme of the gift, the several parts of the grant are treated as inseparable and the whole is adjudged void.
"Where a devise violates the rule against perpetuities, but is made as supporting life estates, or estates for years, which are concurrent or consecutive, the life estates, or estates for years are not to be vitiated by the invalidity of the subsequent devise, unless it clearly appears that the prior created estates are elements or parts of the plan of ultimate devise." Glock v. Glock, 110 N.J. Eq. 477, 160 A. 339.
Central Hanover Bank & Trust Co. v. Helme, 121 N.J. Eq. 406, 190 A. 53; Clark v. Union County Trust Co., 127 N.J. Eq. 221, 12 A.2d 365 (supra), and cases cited at page 226.
The settlor's primary concern, sub judice, was to make provision for her daughter and her grandchildren during their lives, and the successive estates for life so created were not incidental elements of the plan for an ultimate gift to great grandchildren.
The invalid limitation to the lives of the great grandchildren of settlor is not the main purpose of the general scheme.
The deed of trust of Aroline C. Gove is herewith declared valid insofar as the provision for the lives of Mary Pitman and her children are concerned, as set forth in paragraphs 1, 2 and 3 of the deed of trust, but invalid insofar as the provision for the great grandchildren, as set forth in paragraph 4 of the deed of trust is concerned.
*372 Since the settlor made no valid provision in the deed of trust for the final vesting of title in her great grandchildren as remaindermen, there remains in the settlor a reversionary estate.
An estate in reversion is the residue of the estate left in the grantor, to commence in possession after the determination of some particular estate granted by him. It arises by operation of law and is distinguishable from a remainder, which must be created by deed or devise. Reversions are actual estates in praesenti and are vested in the sense of a present fixed right of enjoyment in futuro. A reversion may exist in personally as well as realty. 33 Am. Jur., § 194, p. 668; 125 A.L.R., pp. 548, 558.
In Fidelity-Philadelphia Trust Co. v. Harloff, 133 N.J. Eq. 44, 30 A.2d 57, the court said, at pages 51, 52 and 54:
"A reversion has been defined as `a future estate created by operation of law to take effect in possession in favor of a lessor or a grantor or his heirs, or the heirs of a testator, after the natural termination of a prior particular estate leased, granted or devised.' 2 Reeves on Real Prop., par. 863. Sir Edward Coke described a reversion to be the returning of lands to the grantor or his heirs after the grant is over. 1 Institutes 142. `A future estate may be indirectly created by giving a livery of seisin for one or more life estates, without an ultimate remainder in fee. The estate remaining in the former owner ready to come into possession on the termination of the life estate or estates is a reversion. The same result is reached when an ultimate remainder in fee is contingent. Until it vests, there is a reversion in the feoffer and his heirs.' (Emphasis is supplied.) Gray, The Rule Against Perpetuities (4th ed.), § 11. A reversion is never created by deed or writing, but arises from operation of law. 2 Bl. Com. 175; Tiffany, Real Prop., par. 135; Todd v. Jackson, 26 N.J. Law 525, 540. `A remainder has its origin in express grant; a reversion merely arises incidentally, in consequence of the grant of the particular estate. It is created simply by the law, whilst a remainder springs from the act of the parties.' Williams, Real Prop. (23d ed.) 362.
"Where did the reversion or inheritance sojourn intermediate the creation of the contingent remainder by the deed of conveyance and the death in 1939 of the life tenant without lawful issue? In the solution of this point of inquiry, two dissimilar rules of law are perceptible. True, where the contingent remainder is created by devise (and formerly by use), the inheritance or fee (constituting the reversion) resides in the testator who can dispose of it, otherwise, it *373 descends to his heirs where it remains until the occurrence of the contingency which takes it from them. Fearne Cont. Rem. 351; 4 Kent Com. 257. The authorities are harmonious in their fidelity to this rule. 33 Am. Jur. 523, § 72."

* * * * * * *
"Where contingent remainders have been created by devise, the courts of our state have esteemed the commonly accepted rule that the reversion reposes in the testator who may dispose of it and if not so disposed of, it descends to the testator's heirs where it remains until it deserts them by reason of the happening of the designated contingency. Holcomb v. Lake, 24 N.J. Law 686; affirmed, 25 N.J. Law 605; Vreeland v. Van Ryper, 17 N.J. Eq. 133; Mulford v. Mulford, 42 N.J. Eq. 68, 6 Atl. Rep. 609; Voorhees v. Singer, 73 N.J. Eq. 532; 68 Atl. Rep. 217; In re Peterson, 85 N.J. Eq. 135; 95 Atl. Rep. 613."
Since Aroline C. Gove left a will, the property here involved, not having been specifically devised or bequeathed, will, upon the death of the last survivor of the children of Mary Pitman, pass as part of the residue of her estate.
Upon application, a trustee successor to Lydia P. Gove will be appointed in order to carry out the directions of the deed of trust heretofore held to be legal.